No. 45,341

THE STATE BANK OF DOWNS, *Appellee,* v. DAVID MOSS, *Appellee,*
E. C. RILEY and BESSIE RILEY, *Appellants.*

THE STATE BANK OF DOWNS, *Appellee,* v. JAMES F. BUSER, *Appellee,*
E. C. RILEY and BESSIE RILEY, *Appellants.*

THE STATE BANK OF DOWNS, *Appellee,* v. CALVIN THULL, *Appellee,*
E. C. RILEY and BESSIE RILEY, *Appellants.*

(454 P. 2d 554)

Opinion filed May 17, 1969.

*Paul L. Aylward,* of Ellsworth, argued the cause, and *George D. Miner,* also of Ellsworth, and *Arno Windscheffel,* of Smith Center, were with him on the brief for the appellants.

*Robert B. Berkley,* of Salina, argued the cause and was on the brief for appellee, The State Bank of Downs; *Tweed W. Ross,* of Beloit, was on the

brief for appellee, Calvin Thull; and *Robert H. Meyer,* of Mankato, was on the brief for appellee, David Moss.

The opinion of the court was delivered by

FONTRON, J.: This is a consolidated appeal of the three cases which are shown in the caption of this opinion. Consolidation was by order of the trial court pursuant to Rules of the Supreme Court, Rule No. 13 (201 Kan. xxiv), all parties consenting that the issues of law and fact are the same in each case. The record which has been filed in this court and is now before us is *State Bank of Downs v. David Moss, E. C. Riley and Bessie Riley,* and what we hold and say concerning that case will be applicable as well to the other two cases, *State Bank of Downs v. James F. Buser, E. C. Riley and Bessie Riley* and *State Bank of Downs v. Calvin Thull, E. C. Riley and Bessie Riley.*

The action by the Bank against Moss, E. C. Riley and Bessie Riley is for the recovery of money alleged to be due (1) on a promissory note executed by defendant David Moss in favor of defendant E. C. Riley and endorsed by Riley to plaintiff The State Bank of Downs, and (2) on a guaranty agreement executed by Riley's wife, the defendant Bessie Riley. Judgment was entered against Mr. and Mrs. Riley, and was reserved as against Mr. Moss. Both Rileys have appealed. The other two actions are brought by the Bank against Buser and the Rileys and Thull and the Rileys on similar grounds.

No dispute exists as to the facts. On June 16, 1966, Moss gave Riley a $14,000 promissory note, payable in three annual installments commencing July 1, 1967, and secured by a "security agreement," an instrument which we understand has superseded our old friend, the "chattel mortgage," which covered two combines and a tractor equipped with cab and air conditioner. The security agreement was duly recorded and was endorsed by Riley before maturity to The State Bank of Downs, herein called Bank.

On April 22, 1966, Bessie Riley executed a Loan Guaranty Agreement to the Bank to enable her husband to obtain credit from the Bank when needed. In this instrument Mrs. Riley guaranteed all indebtedness of Mr. Riley to the Bank, either then owed or thereafter incurred, to the tune of $750,000.

No payments were made on the Moss note and on July 26, 1967, this action was filed against Moss and the Rileys to recover $14,000

plus 8% interest. To the petition filed by the Bank the defendants Riley filed the following answer:

"Now come the defendants, E. C. Riley and Bessie Riley, and for their answer to the petition of the plaintiff filed herein, admit the allegations of Paragraphs 1, 2, 3, 4, 5, 6 and 9.

"1. For further answer the answering defendants allege that the note, indebtedness and security was contracted and given by the defendant, David Moss to the defendants and plaintiff for the accommodation of the defendants and plaintiff and at the request of the plaintiff and defendants.

"2. The answering defendants for further answer allege that said indebtedness has been fully satisfied from the proceeds of security held by the plaintiff and that the application of said proceeds has been directed as set out by letter attached hereto, marked Exhibit 'A'. and made a part hereof.

"WHEREFORE, answering defendants pray that the plaintiff take nought and defendants have their costs herein."

Exhibit "A" is a copy of a letter sent by Mr. and Mrs. Riley to the Bank, which reads as follows:

"September 19, 1967

"State Bank of Downs
Downs, Kansas
Gentlemen:

You are hereby notified that E. C. Riley and Bessie Riley, his wife, who are indebted to your institution for and upon certain notes, guarantees and endorsements, one of which notes given as additional security for endorsed paper held by you has been foreclosed on certain mortgage property in Jackson County, Missouri which foreclosure provided $94,000.00 in proceeds to be applied on the indebtedness of the said E. C. Riley and Bessie Riley, his wife; and the said E. C. Riley does elect to have said proceeds from said foreclosure applied on his indebtedness and notes and endorsements as hereinafter set forth. All said proceeds from the foreclosure above set out as well as any other security held by you shall be applied in the following order and priority:

|  | Date Note | Name and Address | Amount Note |
|---|---|---|---|
| 1. | 6/20/66 | James F. Buser, Cawker City, Kansas | $14,000.00 |
| 2. | 8/ 5/66 | Leonard G. Bowles, Downs, Kansas | 4,000.00 |
| 3. | 8/15/66 | Warren Lamont | 12,000.00 |
| 4. | 6/16/66 | David Moss, Cawker City, Kansas | 14,000.00 |
| 5. | 8/ 9/66 | Calvin Thull, Cawker City, Kansas | 8,000.00 |
| 6. | 7/ 6/66 | John L. Grady, Greenwood, Missouri | 15,000.00 |
| 7. | 1/ 1/66 | Bob Porter, Glen Elder, Kan. | 4,150.00 |
| 8. | 10/16/65 | V. L. Oldfield, Burr Oak, Kansas | 3,865.05 |
| 9. | 7/26/66 | Harold E. Grady, Dodge City, Kansas | 16,000.00 |
| 10. | 7/12/66 | Ray M. Frazier, Cawker City, Kansas | 15,000.00 |
| 11. | 6/25/66 | Ronnie Muse, Madison, Kansas | 12,900.00 |

The authorization to apply proceeds of security on payments on any of our indebtedness includes all interest on the principal sums computed at the rate of 6% per annum.

Yours very truly,

E. C. Riley<br>Bessie Riley"

To the Riley letter of September 19, the Bank responded on October 5, 1967, with the following communication:

"E. C. and Bessie Riley
Cawker City, Kansas 67430
Dear Mr. and Mrs. Riley:

With the authority and at the direction of The State Bank of Downs, its attorney replied to your letter of September 19, 1967, relating to the application of the proceeds from the foreclosure of the Jackson County, Missouri real estate.

You are further advised that the State Bank of Downs has not applied any of said proceeds to the James F. Buser, David Moss, Calvin Thull, and Ray M. Frasier notes which were endorsed by you to this bank.

Yours very truly,

The State Bank of Downs<br>By: /s/ Paul D. Berkley<br>Paul D. Berkley<br>Vice-President

cc: Mr. Paul L. Aylward
    Mr. Arno Windscheffel"

Both the Bank and the Rileys filed motions for judgment on the pleadings. After a hearing before the court the Bank's motion was sustained and judgment was entered against Mr. and Mrs. Riley. Findings of the court, contained in the journal entry, are as follows:

"1. That the aforesaid defendants contend they are privileged by letter dated September 19, 1967, to direct the plaintiff creditor in the application of the proceeds realized from the foreclosure of deeds of trust upon real property in Jackson County, Missouri, which deeds of trust were held by said plaintiff as collateral or additional security for numerous promissory notes endorsed by said E. C. Riley to plaintiff herein, notwithstanding plaintiff thereafter advised defendants that plaintiff had not applied any of said proceeds to the note involved herein.

"2. That, as a matter of law, defendants' contention is unfounded and untenable; that defendants admit in their answer all the allegations of paragraphs 1, 2, 3, 4, 5, 6, and 9 and except to the extent of the aforesaid contention do not deny paragraph 7 and 8, which to such extent are admitted under K. S. A. 60-208 (d); and that there is no genuine issue as to any material fact relating to the liability of said defendants to plaintiff.

"3. That the plaintiff's motion for judgment on the pleadings should be sustained;

"4. That the defendants' motion for judgment on the pleadings should be overruled;

"5. That there is no just reason for delay and summary judgment should be granted to the plaintiff in this case against the defendants, E. C. Riley and Bessie Riley.

"6. That the defendants, E. C. Riley and Bessie Riley, have failed, neglected and refused to pay the principal and interest due upon the promissory note as alleged in plaintiff's petition; and

"7. That there is due to the plaintiff from the defendants, E. C. Riley and Bessie Riley, jointly and severally, the sum of $15,462.22 plus interest from October 13, 1967, until paid at the rate of eight percent per annum together with all costs herein.

"The court reserves jurisdiction of this matter as to defendant, David Moss."

For the enlightenment of the reader we should point out that the paragraphs of the Bank's petition which the Rileys admitted alleges the residence of the several parties; the execution of the Moss note and accompanying security agreement and their delivery to Riley; the endorsement of the note and security agreement by Riley to the Bank; and that $14,000 plus interest was due the Bank from the defendants. Paragraphs 7 and 8, which were neither admitted nor denied by the Rileys alleged (1) that no part of the note had been paid but was in default, and (2) that Bessie had executed a guaranty agreement on which she was obligated. The trial court correctly held that the allegations of paragraphs 7 and 8, not being denied, were admitted by virtue of K. S. A. 60-208 (d).

The sole question now before us is whether the Riley answer tenders a sufficient defense to the cause of action pleaded by the Bank. We agree with the trial court that it does not.

It will prove helpful to recite a few additional facts gleaned both from the brief filed by the Bank, and undenied by the Rileys, and from a stipulation of the parties filed in this court. On April 22, 1966, the date of Bessie's execution of the guaranty contract, Mr. and Mrs. Riley, as security for all indebtedness, obligations and liabilities of either of them to the Bank, executed four promissory notes in the aggregate amount of $175,000. All four notes were due on or before October 1, 1966, and were secured by second trust deeds on certain Kansas City, Missouri real estate.

At some unspecified time, but obviously prior to September 19, 1967, the date of the Riley letter to the Bank, the Kansas City properties were foreclosed under said trust deeds and the properties were bid in by the Bank for $94,000. On oral argument we were advised by plaintiff's counsel that some of the properties bid in by

the Bank had not yet been sold, but the total which will utimately be realized from the foreclosed properties would be substantially less than $94,000. Nevertheless, the Bank concedes itself bound by its bid.

A total of twenty-eight notes with accompanying security agreements were sold by Riley to the Bank and endorsed by him. The unpaid balance now due on the notes amounts to some $272,015.40. Of the twenty-eight individuals who purportedly executed the notes fifteen, according to Riley, were not known to him. Strangely enough, when the Rileys, in their letter of September 19, designated certain notes on which the Bank should apply the proceeds from the collateral security, they designated none of the fifteen notes whose makers allegedly were unknown to Mr. Riley.

The gist of the Rileys' defense of payment is simply this: that being debtors of the Bank by reason of Riley's endorsement and Bessie's guaranty of notes sold to the Bank, they have the unqualified right to direct how the proceeds from the collateral security furnished by them shall be applied; that in the exercise of this right they have directed that the proceeds be applied to the notes of Moss, Buser, Thull and others; that the sale proceeds are sufficient to pay the Moss, Buser and Thull notes in full; accordingly, these three notes are paid in full and the Bank has no further right of recovery thereon.

We are cited to relatively little authority squarely in point. The Rileys rely heavily on quotations and cases take from an annotation in 57 A. L. R. 2d, commencing on page 855, under the heading "Application of payments as between debts for which a surety or guarantor is bound and those for which he is not." This annotation obviously does not reach the exact question posed here, as may readily be seen from the paragraph on page 858, under the subtitle "Scope" which recites:

"The scope of the annotation as described in 21 ALR 704 is controlling, and accordingly it is presupposed *that one of the obligations or debts in question is beyond the liability* assumed by the surety or guarantor." (Emphasis supplied.)

The situation currently before us is entirely different. The Rileys are contingently, or secondarily, liable on *all* twenty-eight notes sold to the Bank, Mr. Riley as endorser and Mrs. Riley as guarantor. (11 Am. Jur. 2d, Bills and Notes, § 525, p. 584.) As additional security for *all* their indebtedness to the Bank, not just a portion of

it, they executed four notes to the Bank totaling $175,000, and gave the Bank, as collateral, the Missouri trust deeds previously mentioned. Accordingly, the entire liability of the Rileys upon the entire twenty-eight notes is within the reach and scope of the collateral provided. The application of the proceeds arising from the collateral to *any one* of the notes would inure to the benefit of the Rileys and reduce *pro tanto* their total obligation to the Bank.

There is a considerable body of law to the effect that where collateral security has been given to secure indebtedness evidenced by a series of notes or obligations, the proceeds flowing from the collateral should be applied to those notes or obligations which are the most precarious. This principle has been exemplified by decisions of this court, although we have not had occasion to apply it to the precise circumstances of the instant case.

In *Brown-Crummer Investment Co. v. Bankers Service Co.*, 130 Kan. 583, 287 Pac. 579, the defendant surety company issued an indemnity contract insuring the plaintiff against loss by embezzlement of securities deposited with a Wichita bank. An employee of the bank misappropriated $28,000 of plaintiff's securities and the bank, upon plaintiff's demand, credited plaintiff with that amount on its books. When the bank failed, its assets were insufficient to pay both the balance in plaintiff's checking account and the $28,000 credit. In defending an action brought by plaintiff to recover against the surety on its bond, the company claimed that its liability on the bond had been extinguished by reason of checks drawn by plaintiff on its checking account after the credit was established, the checks having exceeded the amount of the credit. In the course of an opinion rejecting the surety's contention, this court said:

"The principle involved is that it is equitable the bank's whole debt should be paid, and it cannot be inequitable to extinguish first those debts for which the security was most precarious. (*Field v. Holland,* 6 Cranch, 8.) . . ." (p. 594.)

For other cases from this jurisdiction applying the same equitable principle, see *Barber County Comm'rs v. Lake State Bank,* 121 Kan. 223, 246 Pac. 524; *State v. Guaranty Co.*, 81 Kan. 660, 106 Pac. 1040.

A case which applies this equitable principle is *Koblegard Co. v. Maxwell,* 127 W. Va. 630, 34 S. E. 2d 116. In discussing the general subject of application of payments, the Supreme Court of West Virginia said:

". . . Under the weight of authority, where collateral covers debts of the principal on some of which a surety is bound and on others he is not

bound, a creditor may, except in the case of a special pledge for a particular debt or debts, apply the proceeds of collateral to debts on which the surety is not bound in preference to those on which he is bound. For an excellent collation of authorities see annotations to *Wait v. Homestead Building Association*, supra, 21 A. L. R. 696; *Salt Lake City v. O'Connor*, 68 Utah 233, 249 P. 810, 49 A. L. R. 941; *Madison National Bank of London, Ohio v. Weber, Executrix*, 117 Ohio St. 290, 158 N. E. 543, 60 A. L. R. 199. The principle permitting a creditor, in the absence of an agreement for a specific pledge to a particular debt, to apply the proceeds of collateral to the notes it secures, as he deems best, is based upon the right of the creditor to protect himself by the payment of the debt or debts least secured. . . ." (pp. 642, 643.)

In *Slaughter v. Texas Life Ins. Co.*, 218 S. W. 1109 (Tex. Civ. App.), the defendant insurance company was the holder, by assignment, of two promissory notes executed by Mr. Slaughter to different payees. The company also held a third Slaughter note in which it was the payee itself. All three notes were secured by a life insurance policy on which some $600 had been realized and had been credited on two of the notes. In an action brought by the insurance company to recover balances due on all the notes, Slaughter contended that the insurance proceeds should have been applied on the third note rather than the other two. In rejecting this contention, the Texas court stated the controlling principles of applicable law in these words:

"[1] (*a*) Where the holder of a note has collateral to secure the payment of the same, such collateral for the purpose of collecting the same and applying it to the debt is the property of the holder of the note; and, if he holds it as security for the payment of more than one debt, he may, in the absence of agreement to the contrary, apply such proceeds as he may deem proper to the payment of the several debts. (Citing cases.)

"[2] (*b*) Courts have frequently stated that in the absence of agreement to the contrary, where collateral was held as security for several debts, the creditor might, at his option apply the proceeds of the collateral to the debt which he deemed the most precarious. Upon this point we quote from Bank v. Ginty, 108 Cal. 153, 41 Pac. 40:

" 'The pledge stood, therefore, as security for both notes, and the case falls within the doctrine invoked by plaintiff that where a creditor holds two notes or obligations one better secured than the other, and has collateral security for both alike, he has the right, in the absence of any modifying agreement, to have the collateral applied upon the obligation which is most precarious by reason of being least secured. (Citing cases.)'

"This however, adds nothing to the force of the proposition, hereinbefore stated, that the creditor, in the absence of agreement to the contrary, may apply the proceeds of the collateral to whichever of several debts secured by it he may see proper.

"[3] (*c*) If it is desired to require a creditor to apply the proceeds of collateral to different debts due him in certain order, this obligation must be

created in the original contract; otherwise the creditor, by the assignment of the collateral, will have acquired the legal right to elect as to the order in which he will apply the proceeds of collateral to the payment of debts due him. The debtor cannot thereafter change such contract without the consent of the creditor. . . ." (p. 1111.)

In *Moats v. Thompson et al., Exrs.*, 283 Pa. 313, 129 A. 105, the defendant Thompson executed his promissory note signed by two sureties. The note was also secured by a real estate mortgage which, by its terms, secured indebtedness incurred in the future, as well. Mr. Thompson was adjudicated bankrupt and proceeds from the sale of the mortgaged property were applied to payment of his later indebtedness rather than to the note the sureties had signed. The Pennsylvania Supreme Court held the mortgage to be valid as to future advances and that the mortgagee was entitled to apply the proceeds from the sale of the mortgaged property to payment of its less secured claims.

For additional cases recognizing the principle that a creditor may apply proceeds arising from collateral to payment of the least secured items of indebtedness, see *Wilhelm v. Schmidt et al.*, 84 Ill. 183; *Ohio Elec. Car Co. v. LeSage*, 198 Cal. 705, 247 Pac. 190.

The foregoing cases exemplify the general rule found set out in 72 C. J. S., Pledges, § 54 (*b*), pp. 102, 103:

"In accordance with the rules relating to the application of payments in general, in the absence of express direction regarding such application or reservation of right of direction by the owner of the collateral, the pledgee may apply the collateral to any debt within the pledge that he may deem most precarious, or as his judgment may dictate, . . . On the other hand, the debtor may expressly direct the application of the proceeds; . . . Such direction, however, *must be given in the original contract;* and if at the time of the delivery of the collateral the debtor fails to exercise his right to direct the application of its proceeds *he cannot do so afterward;* and the creditor may, at his election, apply the proceeds to the payment of any of the secured debts which are due at the time the money is received." (Emphasis supplied.)

The Rileys do not contend they gave any directions whatever as to application of payments at the time the collateral was furnished. Their attempted designation, by letter of September 19, 1967, came not only after the collateral had been pledged, but nearly two months after this lawsuit was commenced to collect on the Moss note. This belated effort was far too tardy.

It is further said in the citation in 72 C. J. S., *supra*, on page 102, that diversity of opinion exists where the proceeds of collateral have not been voluntarily paid but represent the result of legal or judicial

proceedings. We believe, however, the weight of authority supports the rule that even where payments may be said to have been involuntary, a creditor retains the option of applying collateral proceeds to the debt which is most precarious.

To such effect is *Henry v. Safford,* 211 Mo. App. 308, 241 S. W. 951, a suit brought against the guarantor of two promissory notes. One Brayton, purchased certain Kansas City real estate, giving three notes, the first two being guaranteed by the defendant Safford. All three notes were secured by a deed of trust. Default being made in payment of the first note, the deed of trust was foreclosed, the property was sold and the proceeds applied to the third, or unguaranteed note. It was contended by the defendant guarantor that the sale proceeds should have been applied to the first two notes on which he was liable under his guaranty, but this contention was rejected. The applicable rule is set out in Syllabus No. 4:

"In the absence of some contractual stipulation to the contrary where a creditor holds several notes against the same debtor, all of which were secured by a mortgage and on one or more of the notes a personal security is bound as well, he is entitled to the benefit of all of the securities he has taken and may apply proceeds of sale of the mortgaged property to the payment of the unsecured notes and pursue the personal security for the payment of secured notes."

A Kansas case, *Robinson v. Waddell,* 53 Kan. 402, 36 Pac. 730 has been cited as supporting the same principle. In the *Robinson* case these were the facts: Robinson sold a tract of land to McConnell, taking five notes in payment, all secured by mortgage. He later sold the notes to Waddell, personally endorsing the first two notes. Default being made, Waddell sued on all five notes and sought to foreclose his mortgage. Judgment was obtained against McConnell and Robinson, both, on the first two notes and against McConnell, alone, on the last three. The mortgage was foreclosed and the trial court directed the proceeds to be applied, first, to the three notes not endorsed by Robinson. On appeal by Robinson, the judgment was affirmed, this court observing that Robinson's endorsement had undoubtedly been required by Waddell to strengthen the security provided by the mortgage.

Additional cases setting forth what we believe to be the majority rule, under circumstances similar to those here, may be found in 21 A. L. R. 724, 725.

Further authority is found in 40 Am. Jur., Payment, § 150, p. 817, where in discussing the application of proceeds of judicial pro-

ceedings between debts for which a guarantor is liable and those for which he is not, it is pointed out:

". . . there is ample authority to the effect that the principle [of *pro rata* application] does not apply where the undertaking of the surety or guarantor properly construed is not to pay a limited part of a debt, but to pay any unpaid balance of the debt not exceeding the limit. . . ."

Mr. and Mrs. Riley are, of course, entitled to have the proceeds realized from the collateral pledged to secure their indebtedness to the Bank applied to the payment of that very indebtedness, and these rights may be enforced by them in proper proceedings. The Rileys' rights do not include, however, the right at this time to demand that proceeds of the collateral first be applied to notes signed by flesh and blood persons known to exist, leaving the bank to whistle for its money from persons whom Mr. Riley now professes not even to know, although he took their notes in the first instance. The chance of substantial recovery against such chimerical characters is minimal at best, and the Bank's rights are not so circumscribed or restricted.

Although neither party has cited K. S. A. 84-9-306, titled " 'Proceeds'; secured party's rights on disposition of collateral," we have nevertheless examined the provisions of that section of the statute, but find its provisions of little help to us in this action.

Under the posture of the case as it now stands, we believe judgment was properly rendered in favor of the Bank against the Rileys. Since jurisdiction has been reserved as to Moss, and since all other parties are still before the court, the court is in a position to see that equity is accomplished and that the legal rights of everyone concerned in this litigation are protected.

The judgment of the court below is affirmed as to all three cases in this consolidated appeal.