No. 56,408

THE RAM COMPANY, INC., *Plaintiff*, v. THE ESTATE OF CLYDE K. KOBBEMAN, DECEASED; ESTHER J. KOBBEMAN, EXECUTOR OF THE LAST WILL & TESTAMENT OF CLYDE KOBBEMAN, DECEASED; ESTHER J. KOBBEMAN, a/k/a A. ESTHER KOBBEMAN; HI-PLAINS ELEVATOR MACHINERY, INC. (formerly KOML, Inc.), a Kansas Corporation; CLYDE K. KOBBEMAN, JR., individually and as parent of MEREDITH L. KOBBEMAN; MEREDITH L. KOBBEMAN, a minor; LAURA JO ANN KOBBEMAN DUKELOW, individually and as parent of CORNELIUS P. DUKELOW; CORNELIUS P. DUKELOW, a minor; THEODORE KENT KOBBEMAN, individually and as parent of KERRIE E. KOBBEMAN and KOURTNEY K. KOBBEMAN; KERRI E. KOBBEMAN, a minor; KOURTNEY K. KOBBEMAN, a minor; *Appellees*, and PLANTERS BANK and TRUST COMPANY, *Appellant*.

(696 P.2d 936)

Opinion filed March 2, 1985.

W. *Dean Owens,* of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause, and *J. Stan Sexton,* of the same firm, was on the brief for the appellant.

*Constance M. Achterberg,* of Achterberg & Neustrom, of Salina, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This action was commenced by The Ram Company to foreclose a mechanic's lien. Esther Kobbeman satisfied the debt to Ram and was assigned all rights held by The Ram Company. The action then became one by Planters Bank and Trust Company (Planters) for judgment on its loans and guaranties and foreclosure of its mortgages to Clyde Kobbeman and Esther Kobbeman and to Hi Plains Elevator Machinery, Inc. (Hi Plains).

Clyde and Esther Kobbeman were married in 1946, and thereafter engaged in farming and ranching operations in Lincoln County. During their marriage the Kobbemans acquired more than 1,000 acres of land and a remainder interest in 320 acres of land subject to the life estate of Clyde's father.

In 1978, the Kobbemans decided to engage in a new business venture by purchasing a company which was then operating as KOML, Inc. KOML was involved in the construction of grain elevators, grain bins and grain handling equipment, and the retail and wholesale sale of parts and equipment for use in that construction business.

On July 31, 1978, Clyde, Esther, and others purchased KOML, Inc., and changed the corporate name to Hi-Plains Elevator Machinery, Inc. In connection with the purchase of the business, Hi-Plains borrowed $730,000 from Planters (the 1978 acquisition loans).

As evidence of the debt two promissory notes were executed by Hi-Plains, one for $215,000 and the other for $515,000. Additionally, a security interest in all personal property of Hi-Plains, including its inventory and accounts receivable and a mortgage covering all of the Hi-Plains real estate, was given. The loans

were secondarily guaranteed by a personal, unlimited guarantee of payment by the Kobbemans.

Hi-Plains was unsuccessful. In spite of management and administrative efforts, by 1980, operating losses were substantial. Operating the business became more and more difficult as obligations to trade creditors increased and became overdue. During 1980, it was decided an attempt should be made to find a buyer for all or part of the Hi-Plains business. The existence of a large debt to trade creditors, however, hampered efforts to sell the business. Troubled over the condition of the Hi-Plains indebtedness, Planters refused to grant additional loans to Hi-Plains unless additional capital was obtained from the owners or a new investor. As a result of these demands, the Kobbemans agreed to execute an additional guarantee secured by a mortgage on their real estate. They also provided a guarantee by their attorney, Frank Norton. The real estate of the Kobbemans was valued at $1,100,000. Based on this additional security, Planters loaned an additional $250,000 to Hi-Plains on March 21, 1981 (the 1981 consolidation loan). Immediately following the consolidation loan, the Kobbemans acquired the remainder of Hi-Plains' outstanding stock.

In spite of the consolidation loan, the Hi-Plains condition grew worse. Overdue obligations to trade creditors again began to accumulate. Hi-Plains defaulted on the 1981 loan. Planters advised the Kobbemans it would renew the past-due notes only if accrued interest was paid and additional collateral provided, since Mr. Norton would not consent to renewal of the $250,000 note on which he was guarantor.

On September 8, 1981, Clyde Kobbeman took his own life by hanging. Frank Norton withdrew as attorney for the Kobbemans and Hi-Plains. Constance M. Achterberg became attorney for Mrs. Kobbeman and for the estate. Robert Berkley, a CPA and attorney specializing in business law, with emphasis in banking, was retained as corporate counsel. Mrs. Kobbeman directed Berkley to sell the business in such a manner that would be in the best interest of the creditors and stockholders. Berkley informed Planters he would operate Hi-Plains as a going business as long as he could or until a sale could be effected.

Berkley immediately directed Planters to apply all payments made by Hi-Plains to the principal only of the 1981 consolidation loan, which was secured by the Kobbemans' and Norton's guar-

antees and a mortgage on the Kobbeman real estate. Berkley determined the business was insolvent and that he was essentially dealing with a liquidation. Planters refused to comply with Berkley's direction to apply payments solely to the principal of the 1981 consolidation loan. It agreed, however, to cooperate with Berkley's efforts to resolve the financial troubles of Hi-Plains.

During the last three months of 1981, the Hi-Plains operations were continued by certain key employees. Berkley continued his efforts to sell Hi-Plains as a going concern. Berkley met and corresponded with Planters' president several times during the period to discuss the financial difficulties of Hi-Plains, the increasing numbers of unpaid trade creditors and unfinished construction contracts, as well as prospects for the sale of the business.

By the end of 1981, it was clear Hi-Plains could not be sold as a going business. Operations were continued, however, in order to sell as much inventory and collect as many of the accounts receivable as possible.

On January 22, 1982, Planters notified Berkley and Achterberg of its election to declare all of Hi-Plains' indebtedness due and payable under the acceleration clause of the notes because of defaults in payment of both the 1978 and 1981 loans.

After Planters had accelerated both loans, Hi-Plains manager Bill Devins made the following payments to Planters in 1982 on behalf of Hi-Plains:

> January 22, 1982, $30,000
> February 8, 1982, $43,000
> March 17, 1982, $30,000
> March 22, 1982, $20,000

Devins, by letter accompanying each payment and on the advice of Berkley, directed Planters to apply the payments to the principal only of the 1981 consolidation loan. Planters again refused to apply the loan payments as the debtor directed. Instead, all the payments except one were applied first to accrued interest on the 1978 loan and then to principal on the 1978 loan.

By the spring of 1982, Hi-Plains was threatened with lawsuits by numerous trade creditors. By written agreement dated March

27, 1982, Hi-Plains voluntarily surrendered to Planters all of the tangible and intangible personal property of Hi-Plains and conveyed all its real estate to Planters in lieu of foreclosure. Berkley advised Planters that most of the accounts receivable over 90 days old were of doubtful collectibility.

Berkley terminated his full representation of Hi-Plains following the surrender of assets to Planters. He continued, on a part-time basis, however, to advise Esther and consult with Achterberg. In addition, Berkley informed Planters he would continue to advise the Kobbeman family with respect to their debts at Planters. Following the termination of his full representation, Berkley met and conferred with Planters' president on a regular basis regarding the continued sale of Hi-Plains collateral. He approved the employees hired by Planters to sell Hi-Plains assets, he was involved in the efforts to refinance the Hi-Plains indebtedness, and he approved sales of Hi-Plains assets.

On August 25, 1982, Planters mailed internal notices to Hi-Plains. The notices stated Planters had abated the accrual of further interest on the three notes due Planters from Hi-Plains. Constance Achterberg, Hi-Plains' attorney, discussed the receipt of the notices with Berkley and advised him that, in reliance on them, Mrs. Kobbeman was going to pay unsecured creditors of the Kobbeman estate. A few days later, Berkley saw Dean Tinkler, president of Planters, and informed him of the receipt of the notices. Tinkler immediately informed Berkley the mailing of the notices was an error and that Planters was continuing to charge interest on the past-due Hi-Plains debts. The notices are a common banking procedure utilized to stop the accrual of interest on doubtful notes for tax and internal accounting purposes. This is done to prevent uncollectible interest from being included as bank assets.

On January 8, 1982, Mrs. Kobbeman petitioned for the admission of Clyde Kobbeman's will to probate in Lincoln County district court. She was appointed as executrix of the will on February 19, 1982. Notice to creditors to exhibit their demands within six months was published on January 14, 1982. Mrs. Kobbeman was served with summons in Planters' action, both individually and as executrix of Clyde Kobbeman's estate, on May 4, 1982. No demand, however, was ever exhibited by Planters in the probate file.

The inventory of Hi-Plains continued to be sold until April, 1983, when the final sale was made by bid. Proceeds from the sale of the inventory were used to pay expenses and Hi-Plains' debts. The Hi-Plains real estate was sold at a foreclosure sale on March 1, 1984.

Judgment of the trial court was entered on August 22, 1983, and journalized on October 28, 1983, where it entered money judgments in favor of Planters and against Hi-Plains and the Kobbemans, but held against Planters on various other issues, which will be more fully set out in the discussion. Planters appeals.

The first issue raised by Planters is that the trial court erred in finding appellees had the right to direct its note payments exclusively to the principal of the 1981 consolidation loan.

In early 1982, Hi-Plains made four payments to Planters as follows:

> January 22, 1982, $30,000
> February 8, 1983, $43,000
> March 17, 1982, $30,000
> March 22, 1982, $20,000

Accompanying each of these payments was the letter directing Planters to apply the payments first to principal and then to interest of the 1981 consolidation loan. The trial court held these payments were voluntary, and thus could be paid as the debtor directed. The court also held since the payments were voluntary the U.S. Rule did not apply and payments could be directed to be paid first to principal then to interest.

At trial appellees argued and the trial court accepted that voluntary payments made by a debtor shall be applied as the debtor directs. We have recognized this right in the past under certain circumstances. See *In re Hart's Transfer & Storage, Inc.*, 6 Kan. App. 2d 579, 581, 631 P.2d 258 (1981). The rule provides that until payment is made, the money is the debtor's property which he is free to apply as he sees fit. 60 Am. Jur. 2d, Payment § 81, p. 665. The rule is not valid when the debtor's money is security for the creditor's loan. The money then belongs to the creditor to apply as he chooses.

Hence, Planters argues, the law of voluntary payments is contrary to the law concerning payments of proceeds from col-

lateral securing a specific debt. This rule was recently recognized by this court in *Turon State Bank v. Bozarth*, 235 Kan. 786, 684 P.2d 419 (1984).

In *Turon* a farmer gave the bank a security interest in all of his cattle, as well as other property. He then sought an additional loan from the bank. The bank told him it could loan him no more money without additional collateral. The farmer then produced an accommodation party. This induced the bank to loan additional money. The farmer then sold some of his cattle. He deposited the money in the bank and asked the banker to apply the payment to the second loan, with the accommodation party. The banker did not respond. The farmer later learned the bank applied the money to the first loan, for which the cattle were collateral.

The farmer argued the banker's silence was consent to the farmer's request. The trial court agreed. This court overturned the trial court, stating:

"A bank's security interest continues after a sale of secured property in the proceeds of the sale. In the absence of a specific agreement otherwise, the proceeds from the sale of secured property must be applied on the note the property secures. There is no agreement in this case which would preclude the application of the proceeds from the sale of the cattle to the note for which the cattle were security. . . . To have released the cattle would have the effect of changing the parties' original agreement where it was agreed Fowler's property was not sufficient collateral for an additional loan. If the cattle proceeds were transferred from the secured note and applied on Bozarth's unsecured note, it would reduce the bank's security by that much on the secured note which was already short of collateral." 235 Kan. at 791.

This court concluded:

"For a debtor to be able to direct a creditor as to how the proceeds of the sale of security shall be applied, the right must have been established in the original contract. See *State Bank of Downs v. Moss*, 203 Kan. 447, 454 P.2d 554 (1969). Here there was no special agreement at the time the collateral was pledged allowing Fowler to direct the application of proceeds. Thus, it is to be applied to the note for which it was security." 235 Kan. at 791-92.

In the instant case, the 1978 acquisition loan was secured by all personal property of Hi-Plains, including inventory, equipment, contract rights and accounts receivable, and a mortgage covering all Hi-Plains real estate. The loan was secondarily secured by the Kobbemans' unlimited guarantee. In 1981, after considerable discussion between the parties as to how to make

Hi-Plains more attractive to potential purchasers so it could be sold, Planters agreed to loan Hi-Plains $250,000 to be used to pay creditors. This 1981 consolidation loan was secured by the Kobbemans' guarantee, a mortgage in the amount of $250,000 in their real estate and a guarantee from Frank Norton.

The payments made to the bank in 1982 came from the sale of Hi-Plains collateral and pledged accounts receivable, all of which were security for the 1978 loan, not the 1981 loan. Thus, the payments were proceeds of collateral securing the 1978 loan.

The debtor requested Planters apply the payments to the 1981 loan rather than to the 1978 loan. Planters refused. Planters notes it was expressly provided in the security agreement on the 1981 loan that Planters had a legal right to direct application of payments in its sole discretion. Appellees do not refute this. Hence, the debtors had no right by agreement to direct the payments. This also precludes the application of the U.S. Rule, which applies only in absence of a statute or specific agreement. See *Gray v. Amoco Production Company,* 1 Kan. App. 2d 338, Syl. ¶ 11, 564 P.2d 579 (1977), *aff'd in part, rev'd in part* 223 Kan. 441 (1978). Thus the trial court erred. Planters was entitled to apply the Hi-Plains payments as it saw fit.

The second issue raised by Planters is that the trial court **erred** in holding the real estate mortgage executed by the **Kobbemans** to secure their 1981 loan did not also secure the 1978 loan.

Appellees initially argue this issue was not raised in appellant's pleadings or during trial; thus, it is precluded from raising the issue later. This issue was raised in the pretrial order. Thus, the issue is properly before this court.

The trial court held the March 21, 1981, mortgage of the Kobbemans' real estate to Planters did not secure any part of the 1978 loans. The court stated:

"The mortgage of March 21, 1981, from Kobbeman to Planters does not secure any part of the 1978 loans for several reasons. By the terms of the mortgage instrument, only future advances were covered and the total loans secured shall never exceed $250,000.00. There is no evidence of intent to include the antecedent debt. In addition to the obvious intent to secure only future advances, that intent is further supported by limiting this security to $250,000.00 — the amount of the March 21, 1981, note. Had Planters really intended to secure the July 31, 1978, notes through this mortgage based upon a consideration of forebearance, it was incumbent upon Planters to make that intent very plain. It would have been easy to do, but it was not done even though Planters prepared the mortgage instrument."

Planters argues the 1981 mortgage covered the 1978 loans since it specifically included antecedent debts and because the 1978 and 1981 loans were of the same kind and quality and arose out of the same series of transactions.

As to the first argument, Planters cites the language of the mortgage which states:

"This mortgage also secures any future advancements made to Mortgagor, or any of them, by Mortgagee, and all indebtedness which Mortgagor, or any of them, may owe to Mortgagee, however evidenced, whether by note, book account, overdraft, guaranty or otherwise; provided, however, that the lien of this mortgage shall not exceed at any one time the sum of $250,000.00 and interest."

Planters contends the language "this mortgage also secures any future advancements . . . and all indebtedness which Mortgagor . . . may owe to Mortgagee . . . ," specifically includes antecedent debts since it secures all future advances and all indebtedness which mortgagor may owe. Appellees argue the mortgage was drafted by the bank and as such, the mortgage must be strictly construed against it. *Dearborn Motors Credit Corporation v. Neel,* 184 Kan. 437, 449, 337 P.2d 992 (1959).

In *Emporia State Bank & Trust Co. v. Mounkes,* 214 Kan. 178, 181, 519 P.2d 618 (1974), we noted the intention of the parties is controlling in the construction of a mortgage. Appellees argue the intent to limit the mortgage to the 1981 loan was evidenced by the limitation on the dollar amount which the mortgage was to secure. The 1981 agreement specifically limited the secured amount to $250,000, which was the amount of the 1981 loan. They argue such a limitation is inconsistent with the argument that the 1981 mortgage also secured the 1978 loan.

Planters asserts that the 1981 loan was of the same kind and quality and arose out of the same series of transactions as the 1978 loan, thus extending the 1981 mortgage to cover the 1978 loan. For support appellant cites *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 647 P.2d 1268 (1982), where this court set out the general rules regarding general dragnet clauses in mortgages to secure subsequent advances. We held a mortgage will be extended to cover subsequent advances where such advances are of the same kind and quality, or arose out of the same transaction or series of transactions as the prior loan. 231 Kan. at

599. Planters contends the same rule applies to dragnet clauses in a subsequent mortgage securing a prior debt. We agree. Where the subsequent mortgage is given to secure advances growing out of the same transaction and includes antecedent debts, it shows a clear intention of the parties to include the prior debt.

Additionally, appellees argue there was no additional consideration given to cause the mortgage to cover antecedent debts. We have held a mortgagee who takes a mortgage to secure a pre-existing debt without parting with anything of value is not a purchaser for value. *Farmers & Merchants State Bank v. Higgins*, 149 Kan. 783, 784, 89 P.2d 916 (1939). However, *Higgins* also holds, " ' "The giving of further time for the payment of an existing debt by a valid agreement . . . is a valuable consideration and is sufficient to support a mortgage as a purchase for a valuable consideration," ' " quoting *O'Brien v. Fleckenstein*, 180 N.Y. 350, 353, 73 N.E. 30 (1905).

We conclude the 1981 Kobbeman mortgage secures all indebtedness of the Kobbemans including the 1978 guarantees of the Hi-Plains notes and that the extension of time for payment is sufficient consideration for the subsequent mortgage.

The third issue raised is that the trial court erred in holding the notices sent by Planters to appellees, stating that zero interest was currently being charged to their loans, estopped Planters from collecting interest on the Hi-Plains notes after that date.

In August, 1982, Hi-Plains received three notices from Planters reflecting that on August 25, 1982, the bank had abated the accrual of further interest on its notes. Mrs. Kobbeman testified she eventually obtained those notices from Hi-Plains and in reliance on them she paid all of the unsecured creditors of the Clyde Kobbeman estate.

Dean Tinkler, president of Planters, testified the notices were intended to be in-house bookkeeping notification and were not supposed to have been mailed to Hi-Plains. The banking purpose was to avoid showing bank profits from interest which was not being collected and hence avoid an incorrect statement of bank assets or income.

The bank learned the notices had been incorrectly mailed to Hi-Plains from Ralph Berkley, attorney for Hi-Plains and Esther Kobbeman. Mr. Tinkler immediately notified Mr. Berkley of the

mistake. Berkley did not notify Mrs. Kobbeman of the Bank's message. Planters did nothing further to inform Esther Kobbeman or Constance Achterberg of the error. Based upon this, the trial court held the doctrine of equitable estoppel estopped Planters from charging interest to Esther after August 25, 1982.

We recently summarized the doctrine of equitable estoppel in *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 (1977), as:

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."

Planters contends it had fulfilled its duty when it explained to Ralph Berkley the notices were sent in error and should be disregarded. Planters had consistently dealt with Berkley regarding Hi-Plains since Clyde Kobbeman's death. Even after Berkley's full-time representation of Hi-Plains ended in early 1982, he continued to be deeply involved in advising Esther Kobbeman, although her attorney of record was Constance Achterberg. The information of the erroneous notice was conveyed by Planters to attorney Berkley. It, therefore, concluded its notification to him was sufficient to correct the mistake made to Hi-Plains. Thus, Planters concludes there was no rational basis for finding Planters falsely represented or concealed material facts calculated to convey the impression that it was abating the interest on the Hi-Plains notes. Planters also contends there is no basis for finding it intended or expected the erroneous mailing would influence Hi-Plains' or anyone else's conduct since it immediately notified Berkley the notice was sent in error and should not be relied upon. Planters also contends it is irrational to believe Mrs. Kobbeman and her attorney relied in good faith upon a computer-generated notice which on its face stated the interest on fluctuating-interest loans was reduced to zero, since Hi-Plains notes were fixed interest loans. Additionally, appellant argues the payment by Mrs. Kobbeman of lawful debts did not prejudice or injure her in any manner, since those debts were

legally owed by her anyway and there is no evidence they could not otherwise have been satisfied.

Appellees cite several Kansas cases in support of their argument that where a party has failed to affirmatively inform another party of a misunderstanding, the party failing to take affirmative action is bound by its silence. This is consistent with the trial court's opinion which stated Dean Tinkler, Planters' bank president, "knew [Esther] relied on the notices and yet he did nothing to change her reliance." Examining the facts, even construed against the Bank, Tinkler did not remain silent when he had a duty to speak. Rather, he immediately informed Berkley, who was the sole Hi-Plains attorney he had dealt with, that the notice was in error and should not be relied upon. Tinkler discharged his duty to speak. The mistaken notice was sent to Hi-Plains. He told Hi-Plains' attorney it was a mistake and that it was not to be relied upon. He did his duty. The fact that attorney Berkley was working only part-time for Hi-Plains makes no difference. The Bank was justified in relying on him since he was the Bank's contact with Hi-Plains.

The lower court improperly applied the doctrine of equitable estoppel in its holding. The law states: "Manifestly, there can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved. . . . Estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction, and nothing can be supplied by mere intendment." 28 Am. Jur. 2d, Estoppel & Waiver §§ 35-6, pp. 641-43. We find several of the elements of equitable estoppel missing here. There was no inducement, since Planters spoke when it had a duty to speak; Mrs. Kobbeman did not rightfully rely on the notices, which on their face, due to the prior circumstances in the case, did not appear reasonable; and Mrs. Kobbeman was not prejudiced by the notices. Equitable estoppel was not established in this case.

Planters next argues it is entitled to recover post-judgment interest. Pursuant to K.S.A. 1984 Supp. 16-204, any judgment rendered by a court of this state shall bear interest on and after the date on which the judgment is rendered at the rate of 15% per annum, *except as otherwise provided in accordance with the law.* The trial court held this last statement was authority for denying the application of K.S.A. 1984 Supp. 16-204 due to the existence of K.S.A. 16-205(a), which provides:

"When a rate of interest or charges is specified in any contract, that rate shall continue until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract, which rate shall be specified in the judgment . . . ."

Applying this statute, the trial court concluded:

"Planters chose, for reasons of its own, to abate interest on these three notes. Its contract with Hi-Plains, as guaranteed by the Kobbemans, then provided for no interest. The court cannot now add interest and change the con-tract. . . . The interest-free feature imposed by Planters on the notes and relied on by Esther, became the contract of the parties. It remains their contract."

Since we have held equitable estoppel is inapplicable and there is no evidence of an agreement to abate interest herein, K.S.A. 16-205 does not apply and post-judgment interest is ap-plicable.

Appellants' final argument is the trial court erred in holding it did not have in personam jurisdiction of Clyde Kobbeman's estate. The trial court allowed judgment for collateral which was pledged in personal loans taken by Clyde, but disallowed any money judgment against the estate which was owed beyond the amount of the collateral.

Planters did not file a demand in Clyde Kobbeman's estate pursuant to K.S.A. 59-2237. Rather, it served process on Esther, both individually and as executrix of Clyde's estate, pursuant to K.S.A. 59-2238(2), which states:

"Any action commenced against any executor or administrator after the death of the decedent shall be considered a demand legally exhibited against such estate from the time of serving the original process on such executor or adminis-trator."

The trial court held this statute must be read in conjunction with the entire probate code. The trial court, citing K.S.A. 59-1303 and 59-2239, found the bank could only get its collateral and could not seek any deficiency from the estate, since no claim was filed against the estate.

Planters cites 15 Vernon's Kansas Prob. C. § 59-1303.1, p. 530 (1978), as authority for the contrary rule.

"If a claimant desires to surrender his security he may file his claim in the probate court and have it allowed for the full amount. If he wishes he may exhaust his security by filing an action in the district court to foreclose his lien. *If the property sold under that proceeding is insufficient to pay the full amount,*

*the district court has the power to render a judgment for the deficiency and that amount is to be considered a demand legally exhibited against the personal representative from the time the original summons was served upon him [citations omitted]."*

Appellant also cites *Searight v. Chor,* 170 Kan. 271, 274, 225 P.2d 118 (1950), which states:

"It appears the framers of the act and the legislature which enacted it K.S.A. 59-2238 intended to provide a simple and direct procedure for the legal exhibition of demands, under the particular circumstances stated in the first two sentences of the statute. It appears they were intended to make unnecessary the filing of another petition in the probate court as is ordinarily required by G.S. 1947 Supp. 59-2237 for the exhibition of demands."

The statements in Vernon's and in *Searight* indicate K.S.A. 59-2238 provides an alternate procedure for seeking judgment on a claim against an estate. Authorities cited by appellees lead to the conclusion that if a claimant utilizes this alternate procedure, he is then limited to the amount of the security. In *Hill v. Hill,* 185 Kan. 389, 401, 345 P.2d 1015 (1959), this court held:

"But where the mortgage is foreclosed without presentation and allowance against the estate of the deceased mortgagor, the collection of the debt will be limited to the proceeds arising from the sale of the mortgaged property, where no claim is presented as required by the statute." Quoting 1 Wiltsie on Mortgage Foreclosure § 157, p. 276 (5th ed. rev. 1939).

. Further, in *In re Estate of Dahn,* 204 Kan. 535, Syl. ¶ 7, 464 P.2d 238 (1970), we held:

"Under the terms of K.S.A. 59-1303, a secured creditor of a deceased debtor has two options: he may file a demand against the estate of the decedent and have the same allowed in full, provided he surrenders the security, or he may exhaust his security and make claim for any deficiency remaining due."

Both *Hill* and *Dahn* are decisions rendered prior to court unification and were thus prompted by lack of communication between the district and probate courts. Such is no longer true. With unification of the courts, the filing of a petition in the district court under Chapter 60 with accompanying service of process upon the executor or administrator is a demand legally exhibited against an estate. If the action is filed pursuant to K.S.A. 59-2239 any deficiency judgment over the security is valid against the estate. If it is not filed within the nonclaim limitation period the claimant may look only to the security.

Planters holds a valid deficiency judgment against the estate of Clyde Kobbeman, deceased.

The judgment of the trial court is reversed on all issues raised by Planters in this appeal and remanded for determination consistent with the mandate of this opinion.

LOCKETT, J., concurring in part and dissenting in part. I concur in the majority opinion except on the issue of estoppel.

Mrs. Kobbeman received a letter from Planters stating:

"Effective 08/25/82. In accordance with the fluctuating rate terms of *your note* number 0003 with a current balance of $230,061.64, the rate has been decreased 8.49% to 0.00%
    Hi-Plains Elevator Mach. Inc.
    Formerly KOML Inc.
    P O Box 1565
    Salina KS" (Emphasis supplied.)

Planters was informed she had received that notice and two others and that she was relying on them. Planters took no action except to deny to Berkley that the information was correct. The trial court held the notices sent by Planters to Hi-Plains, stating zero interest was currently being charged on its loans, estopped Planters from collecting interest on Hi-Plains' notes after that date. The principles of equitable estoppel were applied by the trial court. Those principles were discussed in *Bowen v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978):

"The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (*Maurer v. J. C. Nichols Co.*, 207 Kan. 315, 485 P.2d 174 [1971].)

" ' . . . One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement. . . .' (*In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976].)

" ' . . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. . . .' (*United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977].)"

To show equitable estoppel, there must be a good faith reliance on a representation made resulting in some change of position because of this reliance. In this case there was a representation made by Planters. Mrs. Kobbeman, representing the estate of the guarantor, relied on that representation and changed her position by paying unsecured debts of the deceased guarantor. The trial court found that her reliance was in good faith, that the notices from the bank and the surrounding circumstances were such that Mrs. Kobbeman, as representative of the estate, had sufficient reason to act in good faith reliance and, therefore, that the bank was estopped from denying the validity of the notice.

The trial court made its findings of fact and conclusions of law. This court did not perform its function as an appellate court, which is to determine only whether the findings were supported by substantial competent evidence and whether those findings were sufficient to support the conclusions of law. *Iola State Bank v. Bolan*, 235 Kan. 175, 679 P.2d 720 (1984). Instead, the majority reweighed the conflicting evidence and found for Planters, reversing the trial court.

SCHROEDER, C.J., joins the foregoing concurring and dissenting opinion.