No. 58,497

J. A. TOBIN CONSTRUCTION CO., *Appellant,* v. JOHN B. KEMP, SECRETARY OF TRANSPORTATION, *Appellee.*

(718 P.2d 302)

Opinion filed May 2, 1986.

*Frederick G. Thompson, IV,* of Gould & Moore, P.C., of Kansas City, Missouri, argued the cause, and *Thomas M. Moore,* of the same firm, and *James T. Wiglesworth,* of Perry & Hamill, of Overland Park, were with him on the briefs for appellant.

*Kris E. McKinney,* of Kansas Department of Transportation, argued the cause, and *Michael B. Rees,* of the same department, was with her on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a dispute between plaintiff J. A. Tobin Construction Co. and defendant Secretary of Transportation concerning which should bear the cost of corrective work on a defective concrete culvert.

Plaintiff was the general contractor on a highway construction project. As a part of its performance under the contract, plaintiff (through a subcontractor) constructed a concrete box culvert. The contract required that, prior to the pouring of the concrete, a Kansas Department of Transportation (KDOT) inspector was to inspect the work. One of the items to be inspected was the placement of the reinforcing steel (rebar). This inspection occurred in October of 1982 and was accomplished by two inspectors who were also present during the subsequent pouring of the concrete. Neither inspector noticed that the rebar had been

improperly placed. A year later, and prior to final acceptance of the project, a KDOT inspector observed cracks in the top concrete mat. An investigation revealed the cause was the improperly placed rebar. The cost of the corrective work was $21,501.00. Had the improper placement of the rebar been discovered prior to the pouring of the concrete, the corrective work would have cost $1,000.00. Plaintiff sought a KDOT change order before proceeding. Plaintiff's position (then and now) was that it was the fault of the inspectors that the error had not been discovered and hence it should only be held responsible for $1,000 of the cost. KDOT declined to issue a change order on the basis the work had not been formally accepted at the time of the discovery of the defect and the correction was, therefore, the contractor's responsibility. Plaintiff exhausted its administrative remedies. Plaintiff did the corrective work and seeks, in this action, to recover $20,501.00 of the cost thereof. The district court entered summary judgment, on stipulated facts, in favor of KDOT and plaintiff appeals therefrom.

Pertinent portions of the contract and specifications are set forth as follows:

"104.01 INTENT OF CONTRACT—The intent of the Contract is to provide for the construction and completion in every detail of the work described. The Contractor shall furnish all labor, materials, equipment, tools, transportation and supplies required to complete the work in accordance with the plans, specifications and terms of the Contract."

"105.11 DUTIES OF THE INSPECTOR—Inspectors employed by the Secretary shall be authorized to inspect all work done and materials furnished. Such inspection may extend to all or any part of the work and to the preparation, fabrication or manufacture of the materials to be used. *The Inspector is not authorized to alter or waive the provisions of these specifications or the contract. The Inspector is not authorized to issue instructions contrary to the plans and specifications, or to act as foreman for the Contractor,* however, he shall have the authority to reject work or materials until any questions at issue can be referred to and decided by the Engineer." (Emphasis supplied.)

"105.12 INSPECTION OF WORK—All materials and each part of detail of the work shall be subject to inspection by the inspector and the Engineer. The Engineer shall be allowed access to all parts of the work and shall be furnished with such information and assistance by the Contractor as is required to make a complete and detailed inspection.

"If the Engineer requests it, the Contractor, at any time before acceptance of the work, shall remove or uncover such portions of the finished work as may be directed. After examination, the Contractor shall restore said portions of the work to the standard required by the specifications. Should the work thus exposed or examined prove acceptable, the uncovering, or removing, and the replacing of

the covering or making good of the parts removed shall be paid for as extra work; but should the work so exposed or examined prove unacceptable, the uncovering, or removing, and the replacing of the covering or making good of the parts removed shall be at the Contractor's expense.

"Any work done or materials used without supervision or inspection by an authorized Secretary's representative may be ordered removed and replaced at the Contractor's expense unless the Secretary's representative failed to inspect after having been given reasonable notice in writing that the work was to be performed."

"105.13 REMOVAL OF UNACCEPTABLE AND UNAUTHORIZED WORK—All work which does not conform to the requirements of the Contract shall be considered unacceptable, unless otherwise determined acceptable under the provisions in Subsection 105.03.

"*Unacceptable work, whether the result of poor workmanship, use of defective materials, damage through carelessness or any other cause, found to exist prior to the final acceptance of the work, shall be removed immediately and replaced in an acceptable manner. This clause shall have full effect regardless of the fact that the defective work may have been done or the defective materials used with the full knowledge of the Inspector. The fact that the Inspector in charge may have previously overlooked such defective work shall not constitute an acceptance of any part of it.*" (Emphasis supplied.)

"105.17 ACCEPTANCE—(a). **Partial Acceptance.** If at any time during the prosecution of the project the Contractor substantially completes a unit or portion of the project, such as a structure, an interchange, or a section of road or pavement, he may request the Engineer to make final inspection of that unit. If the Engineer finds upon inspection that the unit has been substantially completed in compliance with the Contract he may accept that unit by notifying the Contractor in writing that the work is acceptable and the Contractor may be relieved of further responsibility for that unit specified by the partial acceptance. Such partial acceptance shall in no way void or alter any of the terms of the Contract."

"704.03—CONSTRUCTION REQUIREMENTS—. . . . ,

"(c) **Placing, Supporting, and Fastening.** All reinforcing steel shall be accurately placed and during the placing of concrete, firmly held by approved supports in the position shown on the Plans. Reinforcing bars shall be securely fastened together. Reinforcement placed in any member shall be inspected and approved before any concrete is placed."

"107.16 CONTRACTOR'S RESPONSIBILITY FOR WORK—*Until final written acceptance of the project work by the Engineer, the Contractor shall have the charge and care thereof* and shall take every precaution against damage or loss to any part of the project work. *The Contractor shall assume all risks of loss and damage to any portion of the project work occasioned by any cause which is within the control of the Contractor and of losses and damages resulting* from the following occurrences: fire, lightning, windstorm, hail, vandalism, malicious mischief, falling objects, explosion, flood, freezing and thawing and *faulty workmanship.* The Contractor shall rebuild, repair, restore and make good all damages to any portion of the project work occasioned by the above described causes and shall bear the expense thereof except for damages other

than as described above which are beyond the control of the Contractor to prevent, including but not restricted to acts of the public enemy or governmental authorities." (Emphasis supplied.)

The plaintiff contractor admits the culvert was defective as a result of its improper placement of the rebar. However, it contends that it is only responsible for that portion of the cost of replacement attributable to cost of correction had the error been discovered prior to the pouring of the concrete ($1,000.00 of the total $21,501.00). Plaintiff, in essence, claims:

1. The KDOT inspections required by the contract are for the contractor's benefit and it had a right to rely thereon;

2. Failure of the KDOT inspectors to observe the faulty workmanship in the placement of the rebar absolves the contractor for the cost of remedial work after the concrete was poured;

3. KDOT is estopped to deny the work change order.

The arguments of the contractor are without merit. Section 105.11 states an inspector is not authorized to alter or waive any requirements of the plans or specifications or act as foreman for the contractor. Section 105.13 clearly places responsibility for correcting defective work discovered prior to final acceptance on the contractor despite the failure of the inspector to discover it or even with the inspector's knowledge thereof. Section 107.16, again, places the responsibility on the contractor for damages as a result of faulty workmanship. Section 105.17, relied upon by plaintiff, is inapplicable. The plaintiff did not request, nor did the engineer inspect or make, a final acceptance of the work.

Plaintiff claims it relied on the inspectors' inspection of the rebar, and KDOT should be estopped from refusing to issue the change order.

Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. There can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved. Estoppel will not be deemed to arise from

facts which are ambiguous and subject to more than one construction, and nothing can be supplied by mere intendment. *Ram Co. v. Estate of Kobbeman*, 236 Kan. 751, 696 P.2d 936 (1985).

The inspections required by the contract were for the benefit of KDOT, not the contractor. The inspectors were without authority to waive the specified placement of the rebar (§§ 105.11 and 105.13). Their failure to notice the error and call it to the attention of the contractor was not something upon which the contractor could have "rightfully relied" so as to give rise to the doctrine of equitable estoppel. Approval by the inspectors is not the equivalent of final acceptance by the engineer.

The judgment is affirmed.