No. 55,195

Turon State Bank, *Appellant,* v. William R. Bozarth, *Appellee.*

(684 P.2d 419)

Review of the judgment of the Court of Appeals in an unpublished decision filed February 9, 1984.

Opinion filed July 13, 1984.

*Robert E. Nugent, III,* of Branine, Chalfant & Hill, of Hutchinson, argued the cause and was on the brief for the appellant.

*William F. Bradley, Jr.,* of Martindell, Carey, Hunter & Dunn, of Hutchinson, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Herd, J.: This is an action on a note. The Turon State Bank appeals from a decision of the Reno County District Court which estopped it from denying receiving payment on a note. The note was made by Rex Fowler and signed by William R. Bozarth, appellee, as an accommodation party. The Court of Appeals reversed and remanded, directing Bozarth to pay the bank.

Rex Fowler, a Reno County farmer, obtained his bank financing from the Turon State Bank. Over a period of time, he had accumulated a total debt to the bank of $106,474.76. The debt was secured by all of Fowler's cattle, crops and machinery. In the spring of 1980, Mr. Fowler sought an additional $18,000 from the bank for the purpose of sowing his spring crops. He was advised by the bank that his request to increase his loan was denied because his assets would not secure the additional amount needed. The bank suggested Fowler produce other security. On May 15, 1980, Fowler obtained the signature of William Bozarth, his son-in-law, as an accommodation party on his note for the $18,000. Bozarth filed a financial statement in support of his signature. The bank accepted Bozarth's signature as sufficient security for the new loan. There were no special instructions or agreements between the bank and Fowler and Bozarth pertaining to the loan. The loan proceeds were paid to Fowler on June 13, 1980.

The 1980 crops were sold and the proceeds applied to the note they secured. In March, 1981, Fowler sold $15,962.61 worth of cattle and deposited that amount in his checking account in the bank on March 16. A few days later, Fowler spoke with Arden Vernon, bank officer, and requested permission to use approximately $2,000 from the sale to pay a feed bill and asked that the balance be applied on the $18,000 note. Vernon made no response to the request but subsequently debited Fowler's account in the amount of $13,962.15. This amount was then applied on the note for which it was collateral rather than the note secured by Bozarth's signature as Fowler had requested. Money was left in Fowler's account to pay the feed bill. Unaware of the bank's action, Fowler notified Bozarth the $13,962.15 had been applied to the note he had signed.

In the summer of 1981, Fowler filed a petition in bankruptcy. On September 2, 1981, the bank sued William Bozarth on the $18,000 note. Bozarth answered challenging the court's jurisdiction over him and alleging payment of approximately $16,000 on the note by Fowler. Estoppel was not pled. After a trial to the court, it found the note unsecured, and that

"when the $13,962.15 was tendered with the request that it be applied to the Bozarth note and the Turon State Bank's representative kept silent, and when the Bank subsequently refused to apply the tender to the note in question, the Bank was estopped to deny that the money should have been applied to the co-signed

note. For that reason, the defendant should be given credit in the amount of $13,962.15 on the debt outstanding."

The Court of Appeals reversed, holding that although the elements of equitable estoppel had been established against the bank, Bozarth could not rely on estoppel because there was no detrimental reliance on his part due to a lack of privity. We granted review.

The bank first asserts the trial court erred in basing its decision on estoppel when that defense was not pled.

Kansas statutes provide affirmative defenses must be set forth in a responsive pleading or be deemed waived. See K.S.A. 60-208(c), which provides:

"In pleading to a preceding pleading a party shall set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense."

Additionally, Kansas courts have consistently held equitable estoppel must be specifically pled and may not be proved under a general denial. See *McClintock v. McCall,* 214 Kan. 764, Syl. ¶ 2, 522 P.2d 343 (1974); *Geis Irrigation Co. v. Satanta Feed Yards, Inc.,* 214 Kan. 373, 521 P.2d 272 (1974); *North River Ins. Co. v. Aetna Finance Co.,* 186 Kan. 758, 352 P.2d 1060 (1960); *Painter v. Fletcher,* 81 Kan. 195, 105 Pac. 500 (1909).

It is not necessary, however, that a party thoroughly explain its legal theory for relief. See *Febert v. Upland Mutual Ins. Co.,* 222 Kan. 197, 563 P.2d 467 (1977). All that is required is "a short and plain statement of a claim that will give the [opposing party] fair notice of what the [other party's] claim is and the ground upon which it rests." *Rinsley v. Frydman,* 221 Kan. 297, 302, 559 P.2d 334 (1977). These rules apply to a defendant's pleading of an affirmative defense, such as in this case, as well as plaintiff's petition. See 61A Am. Jur. 2d, Pleading § 154, p. 154.

The purpose of requiring a defendant to affirmatively plead estoppel is fairness. See 61A Am. Jur. 2d, Pleading § 152, p. 152. Thus, as long as defendant has pled the facts constituting the defense of estoppel, the failure to use the word "estoppel" in his answer is not conclusive. See *Yeoman v. Morris,* 135 Kan. 566, 570, 11 P.2d 683 (1932).

In the instant case, the word "estoppel" is not set out in any of the pretrial motions. The only facts pointing towards estoppel are first in Bozarth's answer where he stated: "[A] payment was

made to the Turon State Bank by the maker, Rex Fowler, in the approximate amount of $16,000.00, and payment and credit was not shown by Plaintiff." Second, appellant's pretrial questionnaire to Bozarth listed as a question of fact: "Did defendant's co-signer give proceeds of certain collateral under other notes to the Bank and directed those proceeds be applied to this note?" Third, Bozarth's affidavit dated July 30, 1982, states he "had received news from Fowler that the Bank continued to claim an obligation due on the subject Note and that they had failed to comply with his specific instructions to apply the recent payment to our Note." We hold the facts as alleged by Bozarth could be grounds for estoppel. This constitutes notice of the defense to the bank thus nullifying any possible unfairness. This issue is without merit.

The next issue is whether there is evidence to support the trial court's decision that the bank was estopped to deny application of the funds to the Bozarth note.

The Court of Appeals recently summarized the doctrine of equitable estoppel in *Levi Strauss & Co. v. Sheaffer*, 8 Kan. App. 2d 117, 122, 650 P.2d 738 (1982), quoting *Bowen v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978), and *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 (1977):

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."

See also, *Iola State Bank v. Biggs*, 233 Kan. 450, 458, 662 P.2d 563 (1983).

Appellee argues the bank is estopped to deny payment on the loan because the appellee's agent did not speak when Fowler requested he apply the money to the loan co-signed by Bozarth. The question, then, is whether there was a duty on the part of appellant's agent to speak. Kansas has recognized "silence itself may give rise to an estoppel where, under existing circumstances, there should have been a disclosure. Where a duty to speak exists, silence is tantamount to dissimulation." *Bruce v.*

*Smith,* 204 Kan. 473, 477, 464 P.2d 224 (1970). See also *Bowen, Administrator v. Lewis,* 198 Kan. 706, 426 P.2d 244 (1967).

The general rule regarding silence and duty to speak is expressed in 28 Am. Jur. 2d, Estoppel and Waiver § 53, pp. 669-70:

"In general, a person is required to speak only when common honesty and fair dealing demand that he do so, and in order that a party may be estopped by silence, there must be on his part an intent to mislead, or at least a willingness that others should be deceived, together with knowledge or reason to suppose that someone is relying on such silence or inaction and in consequence thereof is acting or is about to act as he would not act otherwise."

The record discloses the bank and Fowler had banked together since 1973. Due to adverse agricultural conditions Fowler began to fall behind in his finances in the late 1970's. The bank was lenient with him and continued to renew his notes, many times merely adding the interest to the principal and making a new note of the total sum. As security for Fowler's notes, which eventually totalled $106,474.76, the bank had a security interest in all of Fowler's cattle, equipment and crops. The bank also had a third mortgage on his real estate. When Fowler requested funds for planting crops in May 1980, the bank advised him it could not lend him any more money unless he could find a co-signer since his present loan exceeded the value of his collateral. Fowler then obtained the signature of Mr. Bozarth on the note for $18,000. This was an unsecured note. The bank then advanced the money.

Fowler planted his corn and milo. When the crops were harvested, the proceeds were deposited in the bank and the bank then debited Fowler's account and applied the proceeds on the note for which the crops were security. Throughout their years of doing business together, Fowler would discuss with Arden Vernon, the Turon State Bank officer, the application of funds from the sale of Fowler's cattle or crops. They would agree as to which would be applied on the notes and what would be retained for operating expenses. It was the practice of the parties for the bank to make the final determination.

In March 1981, when Fowler received $15,962.61 from the sale of cattle, he deposited the entire amount in his account at the bank as he was required to do. A few days later Fowler talked to Vernon about the application of those funds. Vernon autho-

rized the payment of the feed bill. As to the application of the remaining funds, Fowler requested they be applied to Bozarth's unsecured note. Vernon did not respond to Fowler's request. Shortly thereafter Vernon applied the $13,962.15 to the loans for which the cattle were collateral and left approximately $2,000 in Fowler's account to pay the feed bill.

Appellee argues Vernon had a duty to speak and that his silence was consent to Fowler's request to apply the $13,962.15 on Bozarth's unsecured note. The trial court agreed with this argument. We cannot agree. Fowler gave the bank a security interest in all of his cattle, as well as his other property, for the loans totaling over $106,000. The bank advised Fowler it could lend him no more money because his collateral was insufficient. Fowler then produced Bozarth, an accommodation party, with a financial statement. This induced the bank to lend an additional $18,000. The $18,000 is secured by the Bozarth signature; Fowler's property is security for the other note.

A bank's security interest continues after a sale of secured property in the proceeds of the sale. In the absence of a specific agreement otherwise, the proceeds from the sale of secured property must be applied on the note the property secures. There is no agreement in this case which would preclude the application of the proceeds from the sale of the cattle to the note for which the cattle were security. Additionally, it had been the practice of the parties to allow the bank to determine the application of proceeds. The bank refused to relinquish its security in the proceeds from the sale of the cattle. To have released the cattle would have the effect of changing the parties' original agreement where it was agreed Fowler's property was not sufficient collateral for an additional loan. If the cattle proceeds were transferred from the secured note and applied on Bozarth's unsecured note, it would reduce the bank's security by that much on the secured note which was already short of collateral.

The bank did not mislead Fowler. It was entitled to apply the proceeds as it did. We hold the bank had no duty to speak. Fowler was proposing his agreement with the bank be changed to allow him to specify how the proceeds from the sale of the bank's security would be applied. The bank did not accept Fowler's offer.

For a debtor to be able to direct a creditor as to how the

proceeds of the sale of security shall be applied, the right must have been established in the original contract. See *State Bank of Downs v. Moss,* 203 Kan. 447, 454 P.2d 554 (1969). Here there was no special agreement at the time the collateral was pledged allowing Fowler to direct the application of proceeds. Thus, it is to be applied to the note for which it was security.

There is no basis for the defense of equitable estoppel. There is no showing the bank by its acts, representations, admissions, or silence induced Fowler or Bozarth to believe certain facts existed upon which they detrimentally relied and acted. *Levi Strauss & Co. v. Sheaffer,* 8 Kan. App. 2d 117.

The judgment of the Court of Appeals reversing the trial court is affirmed. The judgment of the trial court is reversed.

HOLMES, J., not participating.