**STOKORS, S.A. and Mission Bank, Plaintiffs,**

v.

**Clifford D. ROTH, Defendant.**

**Case No. 94–2240–JWL.**

United States District Court, D. Kansas.

May 24, 1995.

Renana B. Abrams, Jerald S. Meyer, Susan Bradley Buse, Armstrong, Teasdale, Schlafly & Davis, and Brett D. Anders, McDowell, Rice & Smith, P.C., Kansas City, MO, for plaintiffs.

Clifford D. Roth, Olathe, KS, pro se.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

This case involves an action by plaintiffs Stokors, S.A. and Mission Bank for judgment on a personal guaranty executed by defendant Clifford D. Roth. The matter is currently before the court on plaintiffs' motion for summary judgment (Doc. # 16). For the reasons set forth below, plaintiffs' motion is granted.

#### II. Factual Background

The following facts are uncontroverted by the defendant. Stokors filed its complaint seeking judgment against defendant on June 14, 1994. Mission Bank was joined as a party plaintiff upon motion by Stokors and an order of this court dated March 14, 1995.

Mission Bank is the holder of an Industrial Revenue Bond (the "Bond"), dated December 24, 1985, in the original principal amount of $3,000,000.00. On that same date, defendant executed an absolute, unconditional and continuing Guaranty of payment of the Bond in favor of Mission Bank, its successors and assigns.

As of June 1, 1994, Two Million Six Hundred Sixty Four Thousand Four Hundred Seventy Nine Dollars and Seventy Nine Cents ($2,664,479.79) in principal and One Million Five Hundred Three Thousand Sixty Dollars and Twenty Eight Cents ($1,503,060.28) in interest was due and owing under the Bond. Interest continues to accrue on the Bond at the bond rate of 18.9%. Mission

Bank last received a payment on the Bond liability on or about December 5, 1991. Mission Bank has applied all payments received in accordance with the Bond terms.

Stokors is the holder of certain interests in the Bond and Guaranty as the result of a Settlement Agreement entered into with Mission Bank dated May, 1994. The Settlement Agreement arose out of an adversary action filed by Stokors against Mission Bank and the Federal Deposit Insurance Corporation in the Elms Bankruptcy. In the adversary proceeding, Stokors alleged that any claim of Mission Bank in the Elms Bankruptcy on account of the Bond should be equitably subordinated to any claim of Stokors by virtue of alleged misappropriation of loan proceeds, by virtue of alleged misappropriation of collateral designed to secure the obligation owed under the Bond, and by virtue of other alleged misconduct. In the Settlement Agreement, Mission Bank assigned to Stokors certain interests in the Bond and Guaranty, including a percentage of recovery under the Bond and the right to enforce the Guaranty.

### III. Legal Standards

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colorado,* 987 F.2d 1473, 1476 (10th Cir. 1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R. Co.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

The Guaranty executed by the debtor provides that it shall be construed in accordance with the laws of the state of Kansas. The Kansas Supreme Court has stated the following regarding the law of guaranty:

> The law of guaranty is a part of the law of contracts; a guaranty is a type or kind of contract. For a guaranty there must be at least three parties: a guarantor, a creditor (the individual to whom the promise is made), and a debtor. The guaranty is an obligation collateral to another contractual duty to perform. The contract of the guarantor is a separate contract. It is in the nature of a warranty by the guarantor that the thing guaranteed to be accomplished by the principal shall be done, and is not an engagement jointly with the principal to do the act.

*Iola State Bank v. Biggs,* 233 Kan. 450, 452–53, 662 P.2d 563 (1983).

One of the most fundamental rules of contract construction in Kansas is that a contract which is plain and unambiguous on its face must be interpreted according to its own terms. *See Wagnon v. Slawson Exploration Co., Inc.,* 255 Kan. 500, 511, 874 P.2d 659 (1994). The Guaranty executed by the parties provides that it shall be construed as "an absolute and unconditional guaranty." Under Kansas law, when a guaranty is absolute, a default by a principal obligor matures the liability of a guarantor against whom a creditor may then proceed without first pursuing an action against the primary obligor. *See Kansas State Bank & Trust Co. v. DeLo-*

*rean*, 7 Kan.App.2d 246, 255, 640 P.2d 343 (1982).

■ The defendant in this case does not directly controvert, in either his answer to the complaint or his response to plaintiffs' summary judgment motion, plaintiffs' factual assertions that: (1) the Bond was validly executed by the primary obligor; (2) defendant executed an absolute, unconditional and continuing Guaranty of payment of the Bond in favor of Mission Bank, its successors and assigns; (3) the primary obligor has defaulted on the Bond; and (4) the amount due and owing under the Bond is as stated by plaintiffs. These facts, if uncontroverted, would entitle plaintiffs to judgment on their claim. *See, e.g., United States v. M.L.K., Inc.*, 859 F.Supp. 495, 497 (D.Kan.1994); *United States v. Frey*, 708 F.Supp. 310, 312 (D.Kan. 1988).

Rather than produce evidence to directly controvert any of these factual averments by plaintiffs, defendant advances three defenses as to why he is not liable under the Guaranty. The first of these is a contention that Stokors lacks standing to enforce the Guaranty. Defendant contends that in order to recover in an action on a guaranty, a plaintiff must hold sole ownership of both the guaranty and the principal obligation. Defendant contends that while the Settlement Agreement assigned the Guaranty to Stokors, it did not assign the principal obligation, that being the Bond, to Stokors. Defendant therefore argues that Stokors cannot enforce the Guaranty because it does not have sole ownership of the Bond.

■ The court finds that defendant's contention is not supported in the law. Defendant relies on a number of cases standing for the proposition that a transfer of a principal obligation operates as an assignment of the guaranty. However, none of these cases reaches defendant's conclusion that an assigned guaranty cannot be enforced without an accompanying assignment of the underlying obligation. Given that Kansas recognizes a guaranty as a separate contract, and that Section 1 of the Guaranty in question here specifically provides that the obligation of the Guarantors is a primary obligation which may be enforced directly against the Guaran-

tors upon demand, the court can find no reason preventing Stokors from bringing suit on the Guaranty given the admitted default by the primary obligor.

In *United States v. McAllister*, 661 F.Supp. 1175 (E.D.N.Y.1987), the court was faced with an identical argument. In *McAllister*, the lending bank had assigned to the Small Business Administration ("SBA") the defendant's guaranty of a corporate loan. The court granted summary judgment in favor of the SBA based on its finding that the material facts were undisputed: the documents and guarantors' signatures were genuine; the corporate borrower defaulted on the underlying note; the parties did not dispute the principal amount outstanding, plus interest; and the guarantors had not made any payment since the borrower's default. *Id.* at 1177. The court continued:

> Despite this seemingly straightforward state of affairs, defendants contend that ... plaintiff has failed to establish that the [underlying obligation] has been negotiated to the SBA under Article Three of the Uniform Commercial Code. They have not, however, suggested how that fact might be relevant. This suit seeks recovery under the guaranty executed by the defendants as individuals, not on the note executed by the corporate entity [note obligor]. Nothing in the defendants' agreement conditions their liability on negotiation of the note.

*Id.* at 1177. This court believes that an identical conclusion as reached in *McAllister* would be reached under Kansas law.

■ Defendant next contends that Stokors' action seeking a judgment on the Guaranty may have been untimely. Defendant contends that there may yet be discoverable evidence that would show that the principal debtor defaulted prior to June 14, 1989, more than five years before this action was filed. Defendant contends that if this were found to be true, this action would be barred by the statute of limitations.

■ A statute of limitations defense is an affirmative defense that must be timely asserted or it is waived. *See* Fed.R.Civ.P. 8(c) (party "shall" set forth affirmative de-

fenses). A statute of limitations defense is generally waived if not set forth in a defendant's responsive pleading. *See Expertise Inc. v. Aetna Finance Co.*, 810 F.2d 968, 973 (10th Cir.1987). A statute of limitations defense may be preserved if it is set forth in the pretrial order. *Id.* However, in the present case, defendant failed to assert his statue of limitations defense in either his answer or in the pretrial order, which was entered on May 23, 1995. Accordingly, the court finds that defendant has waived any defense based on the expiration of the applicable limitations period.

■ Defendant's final argument is that the plaintiffs should be estopped from enforcing the Guaranty. The Kansas Supreme Court has set forth the law of equitable estoppel as follows:

Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.

*Turon State Bank v. Bozarth*, 235 Kan. 786, 789, 684 P.2d 419 (1984) (*quoting Levi Strauss & Co. v. Sheaffer*, 8 Kan.App.2d 117, 122, 650 P.2d 738 (1982)).

In his affidavit attached to his response, defendant sets forth the following facts, which he contends entitle his estoppel argument to proceed to trial:

1. In December of 1985, I spoke with Mr. Frank Morgan who represented that he spoke for Metro North State Bank regarding the issuance of the Elms Inn Partners Industrial Revenue Bonds. It was not unusual for me to speak with Mr. Morgan regarding such matters since I had a long banking relationship with the Morgan banking system and had done so on numerous occasions for more than 10 years prior to December 1985.

2. The Morgan banking system, specifically Metro North State Bank's representative, Mr. Morgan, on behalf of the Mission Bank, represented to me that the Guaranty on the Elms Inn Partners Industrial Revenue Bonds were to be used for banking purposes only in their file and were to be released when the bonds were fully purchased, and requested that my office draft that guaranty and that I and Mr. Richard E. Morrison sign it.

3. I related this information to Mr. Morrison and in reliance upon the statements of Mr. Morgan, Mr. Morrison and I executed the Guaranty prepared by my office.

The court finds that the averments contained in defendant's affidavit fail to set forth specific facts showing that there is a genuine issue for trial. Defendant's estoppel argument requires a showing that actions by plaintiff Mission Bank preclude plaintiffs from asserting rights against defendant on the Guaranty. In order to attribute any statements made by Mr. Morgan to plaintiff Mission Bank, defendant must show the existence of an agency relationship between them. Whether there is any competent evidence reasonably tending to show an agency relationship is a question of law for the court. *Memorial Hosp. v. Carrier Corp.*, 844 F.Supp. 712, 717 (D.Kan.1994). Under Kansas law, the following standard applies to determine whether an agency relationship exists:

To determine whether the record establishes an agency by agreement, the record must be examined to ascertain if the party sought to be charged as principal has delegated authority to the alleged agent by words which expressly authorize the agent to do the delegated act. If there is evidence of that character, the authority of the agent is express. If no express authorization is found, the evidence must be considered to determine whether the alleged agent possesses implied powers. The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an

**270**

agency, in which event the relationship may be held to exist, notwithstanding either a denial by the alleged principal or whether the parties understood it to be an agency.

An agency is implied if, from statements of the parties, their conduct, and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which, when exercised, would normally and naturally lead others to believe in and rely on the acts as those of the principal. While the relationship may be inferred from a single transaction, it is more readily inferable from a series of transactions. An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were · such as to make such an agency seem natural and probable.

*Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 448–49, 827 P.2d 24 (1992).

The affidavit presented by defendant contains no evidence that Mission Bank expressly delegated authority to Mr. Morgan to act as its agent. Similarly, the averments in the affidavit do not contain any evidence regarding the relationship between Mr. Morgan and Mission Bank that would tend to establish an implied agency relationship between the parties. Defendant simply fails to present any evidence regarding the relationship between Mr. Morgan and Mission Bank, other than defendant's bald statement that Mr. Morgan spoke "on behalf of The Mission Bank." The court finds that defendant's mere assertion that Mr. Morgan spoke on behalf of Mission Bank, absent any evidence regarding the relationship between Mr. Morgan and Mission Bank tending to show an agency relationship existed, is not sufficient to create a question of material fact regarding the existence of an agency relationship. Accordingly, the court finds that defendant's estoppel defense, which is based on alleged statements made by Mr. Morgan, fails.

## V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** plaintiffs' motion for summary judgment (Doc. # 16) is granted.

**IT IS FURTHER ORDERED THAT** plaintiffs shall submit a proposed order of judgment to the court on or before June 12, 1995. Defendant shall be given until June 19, 1995 to file any objections to the proposed form of judgment, following which time the court shall enter its judgment order.

**IT IS SO ORDERED.**