No. 124,168

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
ROSA LEE RANEY.

SYLLABUS BY THE COURT

1.

Kansas district courts have general original jurisdiction over all matters, both civil and criminal, unless otherwise provided by law. This means that a district court has jurisdiction to hear all subject matters unless the legislature provides that it does not or that jurisdiction lies elsewhere.

2.

Subject-matter jurisdiction is the power of a court to hear and decide a particular type of action. Kansas district courts' general original jurisdiction includes the authority to hear probate proceedings.

3.

Venue describes the proper or possible place for a lawsuit to proceed. Venue is not a jurisdictional matter, but a procedural one. Considerations of venue involve practical and logistical aspects of litigation—the convenience of the parties and witnesses and the interests of justice.

4.

K.S.A. 59-2203 governs venue in probate cases; it does not confer or otherwise affect district courts' subject-matter jurisdiction over probate cases.

Appeal from Trego District Court; GLENN R. BRAUN, judge. Opinion filed January 20, 2023. Affirmed.

*Jonathan M. Snyder*, of Snyder Law, LLC, of Topeka, for appellant Carl Raney.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman LLP, of Hays, for appellee Wayne Raney.

Before WARNER, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.

WARNER, J.: This case is the latest in a series of legal disputes between Carl Raney and his siblings as to how their mother's estate should be administered. The most recent dispute involves a motion Carl filed in 2020—about four years after the estate had been opened and over a year after the district court entered judgment against him. In his motion, Carl claimed that the venue for the four-year-old probate case was improper, as it should have been filed in a different Kansas county. Carl asserted that because Trego County was not the correct venue for the lawsuit, the district court never had subject-matter jurisdiction to open and administer the estate, and the judgment against Carl was void. The district court disagreed and denied Carl's motion, leading to this appeal.

The parties have now submitted briefs discussing various complicated procedural mechanisms, as well as obscure and largely ambiguous references from Kansas Supreme Court decisions that predate court unification. But these discussions miss the larger point: Venue and subject-matter jurisdiction are different concepts. As a court of general jurisdiction, the district court had subject-matter jurisdiction to administer Rosa Lee Raney's estate. And Carl waived his venue concerns early in the probate litigation, years before he filed his current challenge. Given these realities, the district court did not err when it denied Carl's motion. We affirm the court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Rosa died in 2016 and was survived by her three adult children: Carl, Virginia Cauthorn, and Wayne Raney. Carl, Virginia, and Wayne have been parties to several Kansas appellate cases over the last four decades. See *In re Estate of Raney*, 247 Kan. 359, 799 P.2d 986 (1990) (Carl, Virginia, and Wayne challenging their father's testamentary capacity in executing a will that effectively disinherited them); *In re Guardianship and Conservatorship of Raney*, No. 110,841, 2015 WL 5927053 (Kan. App. 2015) (unpublished opinion) (Carl challenging Wayne's actions managing their mother's conservatorship before her death), *rev. denied* 304 Kan. 1017 (2016); *In re Estate of Raney*, No. 122,421, 2021 WL 3439210 (Kan. App. 2021) (unpublished opinion) (Carl appealing the district court's decision that he had challenged the distribution in Rosa's will and thus was disinherited under the will's *in terrorem* provision). This court described the events leading up to the current legal dispute in our two previous decisions involving Rosa, but we provide an abbreviated description here for context.

*The Conservatorship Case*

Rosa suffered a stroke in March 2010. A year later, she filed a voluntary petition with the district court in Trego County, asking that Wayne be appointed as her conservator. At the time, Rosa was living at an assisted-living center in Trego County. Though Carl objected to Wayne's appointment, the district court granted Rosa's petition and appointed Wayne as conservator.

Rosa suffered a second stroke in September 2011. Sometime around March 2012, she was moved from the Trego County assisted-living center to a retirement home in Meade County. Carl continued to challenge Wayne's conduct as conservator, but the district court ultimately ruled in 2013 that Carl's claims were without merit. This court

3

affirmed the district court's decision. *In re Guardianship and Conservatorship of Raney*, 2015 WL 5927053, at *4-5.

Rosa executed her will in October 2011. The will divided Rosa's estate—which included real property in Stanton and Ford Counties and over 4,000 acres of land and underlying mineral rights in Belize—between Carl, Virginia, and Wayne. The record also shows that at some point, Rosa owned real property in Trego County in a joint tenancy with Wayne, but this property was not discussed in her will.

In July 2013—as the parties litigated Carl's claims in the conservatorship case—Rosa executed a codicil to her will. The new provision added an *in terrorem* provision, stating that any heir who contested her will would be disinherited.

In the codicil, she stated she was a resident of Meade County. Rosa passed away in Meade County in April 2016.

*The Probate Case*

A month later, Wayne filed a verified petition for probate of the will and codicil with the district court in Trego County. The petition did not state Rosa's county of residence—only that "at the time of death said decedent was a resident of Kansas." Though Virginia had been named as a co-executor in the will, she lived out of state and resigned her position, indicating that Wayne lived nearby and would be better able to handle the task. Wayne mailed copies of the petition to Virginia and to Carl.

The probate petition Wayne filed was set for hearing in June 2016. Before the hearing, Carl filed a pro se request for a continuance, stating he contested the will and believed that Trego County was "not the proper county to decide the provisions of the estate." He also requested an order to show cause, questioning the court's jurisdiction

given what he believed to be irregularities in the petition and stating that Rosa's properties were in Ford County and Stanton County, not Trego County. Carl alleged that Wayne had filed the petition in Trego County to influence how the assets would be distributed. The court continued the June hearing to allow the parties time to address these concerns.

Wayne later petitioned for appointment of a special administrator, and this request was set for a hearing in July 2016. He mailed notice to Carl, but Carl did not appear at the hearing. The district court commented that Carl had filed a challenge to venue being in Trego County and that an inventory of Rosa's property had yet to be filed. The court asked Wayne's counsel if Rosa owned any real estate in Trego County when she died. Wayne's counsel responded that she did. The court commented, "I am more comfortable then moving forward here knowing that." The court appointed Wayne as special administrator. Later that month, Wayne filed a notice of trial. The notice stated that "the challenge to the will of Rosa Lee Raney filed by Carl Raney will be heard, Wednesday, October 5, 2016." Wayne mailed the notice to Carl via email and sent it to his last known address.

In September 2016, Carl filed a motion for change of venue, as well as a demand for payment against the estate for $2,200,000, which he claimed was due to him for managing the Belize property. Carl also filed a wrongful-death action against Wayne and Virginia in Stanton County and sought to postpone the October 5 hearing until after it was resolved.

The day before the October hearing, Carl emailed the district court and counsel "withdrawing any challenge to the admissibility" of the will and advising that attorney Mark Ayesh would be representing him. Ayesh emailed the district court and counsel, stating: "Any challenge to the admissibility of the Will or Codicil should be withdrawn. All issues pertaining to the impact and/or interpretation of any provisions of the Will or

5

Codicil are reserved." Thus, all of Carl's previous procedural challenges—including his venue challenges—were withdrawn, and the case went forward.

The district court admitted the will and codicil to probate later that month. The court found that Rosa was a resident of Trego County when she died and issued letters testamentary to Wayne as executor of Rosa's estate. On the same day, Wayne petitioned in Rosa's guardianship case for approval of his final accounting, which only listed her properties in Stanton County, Ford County, and Belize. Wayne's final inventory of Rosa's real property did not mention any property in Trego County.

Ayesh represented Carl in the probate case until July 2017 but then withdrew. Carl continued to assert that he was owed $2,200,000 for his work as the farm manager for the Belize property (though a Belize court found this contention to be unfounded). He also asserted that Wayne was mishandling the estate and that, despite Rosa's declarations in her will, the property should be divided equally among the three children. The district court later denied Carl's claim for $2,200,000 based on the ruling of the Belize court. Carl retained new counsel, but that attorney also withdrew as the case progressed.

In 2019, when the probate matter had been pending for over three years, Wayne filed a motion to enforce the *in terrorem* clause in the codicil to Rosa's will. Wayne asserted that Carl had repeatedly violated that provision during the probate case. The district court ultimately granted Wayne's request, effectively disinheriting Carl from Rosa's will. This court affirmed the district court's decision in 2021. *In re Estate of Raney*, 2021 WL 3439210, at *9, 11.

Carl represented himself in his appeal of the decision regarding the *in terrorem* clause. But while his appeal was pending, he retained new counsel and in 2020 filed a new motion in the district court—the motion giving rise to this appeal.

6

*The Subject of this Appeal: Carl's 2020 Motion to Transfer Venue*

Carl titled his 2020 motion a Petition to Transfer Venue. In his motion, Carl again argued that Trego County was not the appropriate venue for administering Rosa's estate under K.S.A. 59-2203. In Carl's view, the only counties where the venue statute contemplated that the estate could be opened were the counties where Rosa resided (which Carl asserted was Meade County) or owned real property (which he claimed were Ford and Stanton Counties). The district court denied his motion, noting it was filed more than three years after the estate was opened.

Carl then filed a motion for relief from judgment under K.S.A. 60-260(b) on the same basis. He claimed that because Trego County was not the appropriate *venue* under K.S.A. 59-2203, the district court never had *subject-matter jurisdiction* to open or administer the estate under Kansas law. Wayne also filed a petition to amend the inventory of Rosa's estate to include a piece of real estate located in Trego County which he did not include in his earlier final inventory (the land Rosa had owned with Wayne in joint tenancy that was not part of the probate estate).

The district court heard arguments on these requests over the course of two hearings. Wayne's attorney explained that Wayne had been concerned about having to probate his mother's estate too far from his home and preferred to do it near his home in Hoxie. He also stated that Wayne and Rosa jointly owned property in Trego County, and the attorney who prepared the deed told Wayne's attorney that Rosa owned real estate in Trego County. Wayne's attorney was unaware that the deed prepared by the other attorney was in joint tenancy and thus that the property would not be part of Rosa's estate. At the hearing, Wayne's attorney conceded that when the petition to probate the will was filed, Rosa owned no real estate in Trego County, as that property had passed by operation of law to Wayne upon Rosa's death.

7

Carl argued that the court erred when it found Rosa was a resident of Trego County, as no one claimed she lived in that county at the time of her death. Carl conceded that the 2016 order admitting the will to probate was a final order he had not appealed. But Carl asserted that it did not matter whether he had appealed the decision because the court lacked jurisdiction to make the order. Carl asserted that the probate petition lacked the essential jurisdictional fact of Rosa's county of residence at the time of her death. Carl also argued he received deficient notice of the October 2016 hearing, as he believed the hearing would only involve Carl's motions, not the petition to admit the will.

After hearing these arguments, the district court denied all the pending motions. The court noted that the estate inventory should not be amended to include non-probate assets (such as the property Rosa had previously owned in joint tenancy in Trego County). And relevant to our discussion in this appeal, the court found it had jurisdiction to hear the case. It distinguished jurisdiction from venue, and stated it had jurisdiction over probate cases for any Kansas resident. It also found that Carl's assertions regarding notice of the October 2016 hearing were unfounded, as the notice of hearing clearly showed that the hearing would be on whether to admit the will. The court noted that Carl had actual notice of the hearing because he and his attorney contacted the court and withdrew his challenges to the will. Finally, the court again denied Carl's request to transfer venue, noting that such an action would be unjust. At the time the district court issued its ruling, the probate case had been pending for almost five years. Carl appeals.

DISCUSSION

The statute at the center of the parties' appellate briefing is the Kansas probate code's venue provision, K.S.A. 59-2203. Generally speaking, the statute indicates that proceedings to probate a Kansas resident's will should be conducted in the decedent's county of residence or in a county where the decedent owned an interest in real property:

8

"Proceedings for the probate of a will or for administration shall be had in the county of the residence of the decedent at the time of such decedent's death if the decedent owned an interest in real property in such county, or, if the decedent did not own an interest in real property in the decedent's county of residence at the time of such decedent's death, in such county of the residence of the decedent at the time of such decedent's death or in any county where the decedent owned an interest in real property." K.S.A. 2021 Supp. 59-2203.

The statute also contains venue directions for cases involving the estates of people who are not Kansas residents, stating that those cases may be conducted "in any county where [the] decedent left any estate to be administered under K.S.A. 59-805." K.S.A. 2021 Supp. 59-2203. K.S.A 59-805 defines the parameters of Kansas courts' jurisdiction over nonresidents' tangible and intangible property. The law has not included a similar statement of Kansas courts' jurisdiction over Kansas residents' estates since the unification of the Kansas court system in 1977.

At first blush, the parties seem to indicate that their dispute is an evidentiary one. Carl argues that K.S.A. 59-2203 required the district court in Trego County to transfer venue of Rosa's probate case to another county because Rosa did not live or own property in Trego County at the time of her death. Wayne argues that there was evidence to support the district court's finding that venue was proper in Trego County because Rosa had declared Trego County as her residence when she filed her petition in the conservatorship case. He also asserts that Carl should have challenged this finding during his earlier appeal in the probate case.

But while Carl's motion is framed as a petition to transfer venue to a different Kansas county, he asserts that the effect of his request is much more wide-reaching than a prospective transfer: He claims that because the case was, in his view, filed in the wrong county under K.S.A. 59-2203's *venue* provision, the district court in Trego County never had *subject-matter jurisdiction* over Rosa's will. On this basis, he claims that all orders

9

the district court entered in the years that this probate case has been pending—including and most importantly its ruling that Carl's challenges disinherited him under the *in terrorem* clause—were void.

Thus, Carl's motion assumes that a district court only has jurisdiction to hear a probate case if it is filed in a venue listed in K.S.A. 59-2203. Put another way, Carl's argument presupposes that the concepts of subject-matter jurisdiction and venue are equivalent in the probate context. They are not.

1. *The district court had general subject-matter jurisdiction to preside over the probate case and administer Rosa's estate.*

Subject-matter jurisdiction is "the power of [a] court to hear and decide a particular type of action." *Chalmers v. Burrough*, 314 Kan. 1, 7, 494 P.3d 128 (2021). In Kansas, the contours of the courts' judicial power are defined by "the Kansas Constitution and Kansas statutes." *In re Marriage of Williams*, 307 Kan. 960, 967, 417 P.3d 1033 (2018). Article 3 of the Kansas Constitution states that district courts have "such jurisdiction in their respective districts as may be provided by law." Kan. Const. art. 3, § 6(b). Thus, parties cannot agree to confer subject-matter jurisdiction where it does not otherwise exist. And because subject-matter jurisdiction establishes the "power of [a] court to hear a case," courts are required to investigate an apparent lack of this jurisdiction even if the parties have not raised the issue. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

In contrast, venue describes the "'proper or a possible place for a lawsuit to proceed, usu[ally] because the place has some connection either with the events that gave rise to the lawsuit or with the plaintiff or defendant.'" *Akesogenx Corp. v. Zavala*, 55 Kan. App. 2d 22, 36, 407 P.3d 246 (2017) (quoting Black's Law Dictionary 1790 [10th ed. 2014]), *rev. denied* 308 Kan. 1593 (2018). Venue is "not a jurisdictional matter, but a procedural one." *Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 546, 567 P.2d 1292

10

(1977). Unlike subject-matter jurisdiction, the judicial district or county where a case is filed rarely affects a district court's authority to hear a case. Instead, considerations of venue involve more practical and logistical aspects of litigation—"the convenience of the parties and witnesses and the interests of justice." K.S.A. 60-609(a). Unlike subject-matter jurisdiction, parties may agree upon a particular venue where a case may be brought. And parties who fail to raise a venue question in their answer or in a motion under K.S.A. 60-212 waive their ability to contest venue later in the case. See K.S.A. 60-610; *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, Syl. ¶ 2, 814-15, 987 P.2d 1096 (1999); *Akesogenx Corp.*, 55 Kan. App. 2d at 37.

Since the unification of the Kansas court system in 1977, K.S.A. 20-301 has provided that district courts have "general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." Kansas courts have long interpreted this statute to indicate that a district court has jurisdiction to hear all subject matters "unless the legislature provides that it does not or that jurisdiction lies elsewhere." *City of Overland Park v. Niewald*, 20 Kan. App. 2d 909, 910-11, 893 P.2d 848, *aff'd as modified* 258 Kan. 679, 907 P.2d 885 (1995).

Kansas district courts' general original jurisdiction includes the authority to hear probate proceedings. See *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766, 241 P.3d 161 (2010); *Quinlan v. Leech*, 5 Kan. App. 2d 706, 710, 623 P.2d 1365 (1981). Thus, the central question we must answer in this appeal is whether the legislature specifically restricted the exercise of district courts' jurisdiction in probate cases to only those cases that comply with K.S.A. 59-2203's venue provisions. Accord *Chalmers*, 314 Kan. at 7 (applying a similar analysis in interpreting the Uniform Interstate Family Support Act). We conclude it has not.

Our analysis begins with the language of K.S.A. 59-2203. See 314 Kan. at 7-8. That statute defines where "[p]roceedings for the probate of a will or for administration

11

shall be had" entirely in terms of "venue." K.S.A. 2021 Supp. 59-2203. It does not mention jurisdiction at all and contains "no language . . . that explicitly deprives a district court of general subject matter jurisdiction over" probate issues. 314 Kan. at 8; accord *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 3, 374 P.3d 680 (2016) (courts do not add statutory requirements not included in the text). Rather, the statute *presumes* that the district court has jurisdiction to hear a probate case and merely provides direction about where the case should be filed. And the statute includes a procedure by which a district court may transfer a case to a more appropriate venue—not dismiss the case entirely, which would be the appropriate action for a court with no authority to hear it. There is nothing in the text of K.S.A. 59-2203 to indicate it was intended to restrict district courts' general subject-matter jurisdiction over probate matters.

Carl does not argue that the text of K.S.A. 59-2203 requires such a result. Instead, he asserts that several older decisions of the Kansas Supreme Court—decided before court unification in the 1970s—can be read to equate courts' jurisdiction in probate matters with the appropriate venue under K.S.A. 59-2203. For example, Carl argues that the Kansas Supreme Court equated venue under that statute with jurisdiction in *In re Estate of Barnes*, 212 Kan. 502, 506, 512 P.2d 387 (1973), when it noted that the "primary jurisdictional facts empowering a probate court to order probate of a decedent's will are either that the decedent was a resident of the particular county at the time of his death or that he left an estate within the county to be administered." See also *In re Estate of Johnson*, 180 Kan. 740, 747, 308 P.2d 100 (1957) ("It was necessary for the probate court to determine the jurisdictional fact of the decedent's residence at the hearing on November 3, 1953.").

The fundamental flaw with Carl's reliance on these decisions, however, is that these cases predated court unification, which "dramatically reconfigured the judicial system"—and the way we think about subject-matter jurisdiction—in Kansas. *In re*

12

*Estate of Heiman*, 44 Kan. App. 2d at 767. We explained some of these changes with regard to probate courts in the *In re Estate of Heiman* case:

> "Before unification, Kansas used a variety of specialized courts, including probate courts, county courts, juvenile courts, and courts of common pleas. They operated separately from the district courts. Those specialized courts had defined—and limited—jurisdictional spheres. For example, the probate courts had exclusive jurisdiction to hear probate matters. No other courts could entertain or decide probate issues or disputes. In legal terminology, the other courts, including the district courts, lacked subject matter jurisdiction over probate matters. Conversely, a probate court had no jurisdiction to decide a criminal case or a juvenile matter. To further confound lawyers and other participants in the process, the configuration of the specialized courts varied from county to county. See generally Report of the Kansas Judicial Study Advisory Committee, pp. 24-26 (May 1974).
>
> "One of the primary goals of court unification was the elimination of 'jurisdictional fragmentation.' Advisory Committee Report, p. 24. As enacted by the legislature, the court unification plan accomplished that purpose by consolidating subject matter jurisdiction in the district courts. Thus, following unification, the district courts began hearing probate matters, juvenile proceedings, and other actions previously entrusted to the specialized courts. Those specialized courts were gone, along with the rigid jurisdiction boundaries that marked their judicial territories." 44 Kan. App. 2d at 767.

Before unification, probate courts' authority to consider and hear cases was limited to the instances identified in K.S.A. 59-301 (Corrick 1964), repealed effective January 10, 1977. For example, probate courts were established in each county and had extraordinarily limited authority to direct actions outside the county's geographical boundaries. There were also a host of other procedural matters that were considered "jurisdictional defect[s]" in pre-unification probate proceedings. See *In re Estate of Kempkes*, 4 Kan. App. 2d 154, 156, 603 P.2d 642 (1979); see also *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 88-89, 626 P.2d 1211 (1981) (noting that some matters

previously considered jurisdictional defects were no longer jurisdictional after unification).

But the legislature abolished probate courts and repealed those restrictions when it unified the court system in 1977. K.S.A. 20-335; L. 1976, ch. 242, § 99. At the same time, it updated the probate code to indicate that "district" courts—not the previous probate courts—presided over those matters. See L. 1976, ch. 242, § 29 (amending K.S.A. 59-2203). And it indicated that district courts "shall have general original jurisdiction" to hear all matters unless otherwise provided. L. 1976, ch. 146, § 9 (amending K.S.A. 20-301).

For these reasons, Kansas courts have repeatedly cautioned that language regarding the scope of the authority of probate and other specialty courts in decisions that predate unification are of limited assistance. Most importantly for purposes of our discussion, these decisions' "discussion of subject matter jurisdiction and limitations on the authority of trial courts to decide particular types of cases has no precedential weight or value in examining those issues under the State's current judicial system." *In re Estate of Heiman*, 44 Kan. App. 2d at 768; see also *Ram Co. v. Estate of Kobbeman*, 236 Kan. 751, 764, 696 P.2d 936 (1985) (distinguishing and declining to follow pre-unification caselaw).

This is not to say that the legislature could not retain jurisdictional rules that existed before court unification if it decided to do so. K.S.A. 59-2203 provides one such example with its treatment of estates of non-Kansas residents. The statute indicates that probate proceedings for nonresidents may be administered "as provided in K.S.A. 59-805"—a pre-unification statute that defines jurisdiction over estates of nonresident decedents. K.S.A. 2021 Supp. 59-2203. But K.S.A. 59-2203 references no such jurisdictional limitations to restrict district courts' power to administer the estates of

Kansas residents. And the jurisdictional restrictions relating to nonresidents do not apply here, as the district court found and the parties agree that Rosa was a Kansas resident.

The modern approach "in considering whether legislation restricted a court's subject matter jurisdiction" is to look for "explicit [statutory] language limiting the court's general jurisdiction." *Chalmers*, 314 Kan. at 11. K.S.A. 59-2203 does not include such a limitation.

"Jurisdiction and venue are not interchangeable." *In re Marriage of Yount and Hulse*, 34 Kan. App. 2d 660, 664, 122 P.3d 1175 (2005). K.S.A. 59-2203 governs venue; it does not confer or otherwise affect district courts' subject-matter jurisdiction to hear probate cases. The district court correctly found that Carl's challenge to the court's venue in 2020 had no effect on its general authority to issue orders in the probate case or otherwise administer Rosa's estate.

2. *Carl's procedural claims—based on venue and notice—are without merit.*

Because the venue provisions in K.S.A. 59-2203 are not jurisdictional, we need only consider whether the district court abused its discretion when it denied Carl's 2020 motion to transfer venue to a different Kansas county. See *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 517, 472 P.3d 110 (district courts have broad discretion to grant or deny a party's request for a change of venue), *rev. denied* 312 Kan. 891 (2020). We find no error in the court's decision.

Though Carl originally raised the question of whether Trego County was the appropriate venue at the outset of the probate matter, he specifically abandoned that challenge—along with his other pending motions—in October 2016. The court then proceeded to administer the estate and issue rulings in the case for over three years,

eventually ruling against Carl based on the *in terrorem* clause. It was only after the court issued this ruling that Carl again sought to transfer the case to a different venue.

This court considered a similar tactic in our decision in *Akesogenx Corp.* To borrow that decision's language, "because [Carl] waited to challenge venue until after the district court had entered . . . judgment against him, he waived all complaints about venue he may have had." 55 Kan. App. 2d at 38. The district court did not abuse its discretion when it denied Carl's motion to transfer venue.

In his final argument on appeal, Carl challenges the district court's authority to administer Rosa's estate on a somewhat different ground. He asserts that he did not have adequate notice that the district court's October 2016 hearing was to involve the admission of Rosa's will (in addition to Carl's many procedural challenges). But as the district court noted, the record belies this assertion. Both Carl and his attorney contacted the court on the eve of the October 2016 hearing date and indicated that Carl was withdrawing any challenge to "admissibility" of the will. In other words, the record reflects—consistent with the district court's ruling—that Carl had actual notice of the intended scope of the October 2016 proceeding.

We further note that Carl chose not to contest those proceedings in 2016. And even if Carl believed that the October 2016 proceeding had been conducted without adequate notice, he could have raised that issue in his earlier appeal. He did not. In short, there are ample reasons to support the district court's denial of Carl's present challenge to his notice of the October 2016 hearing.

The district court correctly found that it had subject-matter jurisdiction over Rosa's estate as part of its general jurisdiction under Kansas law. Carl's efforts to undermine that jurisdiction years after the fact—through the venue provisions in K.S.A. 59-2203 and his

16

untimely challenges to notice—are without merit. We thus affirm the district court's judgment.

   3.  *We deny Wayne's request that Carl pay his attorney fees in this appeal.*

As a final matter, Wayne asks this court to order that Carl pay his attorney fees and expenses incurred during this appeal. Wayne argues that attorney fees are warranted, as Carl's appeal raises only frivolous claims "for the sole purpose of harassment and delay."

This court may award attorney fees for services rendered in an appeal if the district court could award attorney fees. Supreme Court Rule 7.07(b)(1) (2022 Kan. S. Ct. R. at 52). If we find that "an appeal has been taken frivolously, or only for the purpose of harassment or delay," we may assess "a reasonable attorney fee for the appellee's counsel." Rule 7.07(c) (2022 Kan. S. Ct. R. at 52).

This is a close case, particularly given the nature of Carl's appeals in his previous cases involving his mother's estate and conservatorship. But on the whole, although Carl's appeal has not succeeded on its merits, we do not agree that Carl's claims were entirely frivolous or that his appeal was taken solely for the purpose of harassment and delay. Carl's jurisdictional claim raised an important legal question that—based on the briefing of both parties—required some discussion. The fact that we did not resolve that claim in Carl's favor does not undermine his right to seek review of the district court's judgment. We therefore deny Wayne's request for appellate attorney fees.

Affirmed.

17